**JOHN C. ELLIS, JR.**
California State Bar No. 228083
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

Attorneys for Luis Gomez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR1003-WQH |
| Plaintiff, | DATE:        June 9, 2008 |
| | TIME:        2:00 p.m. |
| v. | |
| | STATEMENT OF FACTS AND |
| LUIS GOMEZ, | MEMORANDUM OF POINTS AND |
| | AUTHORITIES IN SUPPORT OF |
| Defendant. | DEFENDANT'S MOTIONS |

## I.

## STATEMENT OF FACTS

The following statement of facts is based on materials received from the government.  Mr. Gomez does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion hearings and trial.  The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

Mr. Gomez was arrested in the early hours of March 4th, 2208.  Agents encountered Mr. Gomez in an area referred to as "Stuart's Bridge." See Report of Investigation at 2 (attached as Exhibit A).   This area is approximately one and one half miles west, and fifty miles north of the international border. See id.  Agent Cortez ordered Mr. Gomez to halt.  See Declaration of L. Gomez (attached as Exhibit B).  Agent Cortez was armed and in uniform. See id. On November 28, 2007, the government filed a one count indictment charging a violation of 8 U.S.C. § 1326.

These motions follow.

## II.

## MOTIONS TO DISMISS THE INDICTMENT

**A.      Motion to Dismiss The Indictment Because it Fails to Allege All Elements of the Charged Offense.**

        The indictment must be dismissed because the government has failed to properly allege all elements of the offense.  The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .."  Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881) (emphasis added).  It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed.  See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

        In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and (b).  In United States v. Salazar-Lopez, 506 F.3d 748 (9th Cir. 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that the defendant has been previously removed subsequent to a conviction (i.e., for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal.  In this case, the indictment only alleges that Mr. Gomez "was removed from the United States subsequent to November 28, 2007."  Here, the indictment does not allege either that this removal occurred subsequent to a conviction or allege a specific date of the prior removal.  Therefore, because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

        Moreover, the indictment fails to allege the following elements necessary to convict Mr. Gomez of the offense: that Mr. Gomez knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States. As a consequence, it must be dismissed. See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting

/ / /

1 forth the components of an entry under the immigration law); see also United States v. Pernillo-Fuentes, 252

2 F.3d 1030 (9th Cir. 2001);  United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).[1]

3 **B.     Dismiss The Indictment Because it Violates Mr. Gomez's Right to Presentment.**

4        Mr. Gomez has a Fifth Amendment right to have a grand jury pass upon those facts necessary to

5 convict him at trial.  In the indictment, the government included the language:  "It is further alleged that

6 defendant LUIS GOMEZ was removed from the United States subsequent to September 29, 2007."[2]  The

7 indictment in this case violates Mr. Gomez's right to presentment in two ways.  First, the language added by

8 the government does not ensure that the grand jury actually found probable cause that Mr. Gomez was

9 deported after December 15, 2003, as opposed to simply being physically removed from the United States.

10 Second, that the grand jury found probable cause to believe that Mr. Gomez was removed "subsequent to

11 December 15, 2003" does not address the possibility that the government may at trial rely on a deportation

12 that was never presented to, or considered by, the grand jury.

13        The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise

14 infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. Amend. V.  The

15 Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be

16 informed of the nature and cause of the accusation . . . ."  U.S. Const. Amend. VI.  Thus, a defendant has a

17 constitutional right to have the charges against him presented to a grand jury and to be informed of the

18 grand jury's findings via indictment.  See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment

19 must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant

20 of what he must be prepared to meet.").

21

---

22        [1]     These issues were decided against Mr. Gomez in United States v. Rivera-Sillas, 376
23 F.3d 887 (9th Cir. 2004).  However, these issues remain open in the Supreme Court.  To reserve
   these issues for further review, Mr. Gomez incorporates the arguments made by the defendant in
24 Rivera-Sillas.  If the Court wants full briefing on these issues, Mr. Gomez will provide it.

25        [2]     Presumably, the government added this language in an attempt to comply with the
   Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).  In
26 Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a
   person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been
27 removed from the United States following a conviction.  This language, however, does not cure the
28 problems with this indictment.  Should sentencing become necessary, Mr. Gomez will file further
   briefing on this issue.

To be sufficient, an indictment must allege every element of the charged offense.  See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)).  Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language.  See Du Bo, 186 F.3d at 1179.  "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress."  United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002).  An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment."  Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language:   "It is further alleged that defendant LUIS GOMEZ-DOMINGUEZ was removed from the United States subsequent to September 27, 2007."  There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense.  It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings).  A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States."  See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.)  As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before the grand jury.  As returned, however, there is no assurance from the face of the indictment that the grand jury in this case was charged with the type of removal necessary to increase a person's statutory maximum under section 1326(b).

As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Gomez.  Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial.  If the government alleged before the grand jury that Mr. Gomez was removed (in a colloquial sense), but offers proof at trial that Mr. Gomez was removed (in an immigration sense), there will be a constructive amendment of the indictment at trial.  See

1  Stirone v. United States, 361 U.S. 212, 217-19 (1960).  Either scenario represents a violation of Mr. Gomez's

2  right to presentment.  Stirone, 361 U.S. at 218-19.

3      A second problem with the indictment is that there is no indication which (if any) deportation the

4  government presented to the grand jury.  In most cases, the government will have a choice of deportations to

5  present to the grand jury to support an allegation that a person had been deported after a specific date.

6  According to information provided by the government, although not conceded by the defendant, Mr. Gomez

7  has been subjected to removal proceedings on more than one occasion.  This renders it a very real possibility

8  that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Gomez was

9  removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its

10  trial proof.  If this were to turn out to be the case, Mr. Gomez's right to have the grand jury pass on all facts

11  necessary to convict him would be violated.  See Du Bo, 186 F.3d 1179.

12                              **III.**

13              **THE INDICTMENT SHOULD BE DISMISSED**
              **DUE TO MISINSTRUCTION OF THE GRAND JURY**

14

15      Mr. Gomez moves to dismiss the Indictment due to misinstruction of the Grand Jury. Mr. Gomez

16  was indicted by the January 2007 Grand Jury. See Clerk's Docket Sheet at 8.  Mr. Gomez's arguments are

17  essentially those set out in Judge Hawkins' dissent in United States v. Marcucci, 299 F.3d 1156 (9th Cir.

18  2002), cert. denied, 1538 U.S. 934 (2003) and Judge Kozinski's dissent in United States v. Navarro-Vargas,

19  367 F.3d 896 (9th Cir. 2004), opinion vacated by and en banc review granted by United States v. Navarro-

20  Vargas, 367 F.3d 920 (9th Cir. 2004), and he incorporates those arguments by reference.  He also incorporates

21  those factual and legal arguments recently advanced in United States v. Martinez-Covarrubias, Case No.

22  07cr0491-BTM (S.D. Cal.), including Judge Burns' particular treatment of the grand jurors, and denied by

23  District Judge Moskowitz.  See United States v. Martinez-Covarrubias, Case No. 07cr0491-BTM (S.D. Cal.

24  Oct. 11, 2007) (order attached hereto as Exhibit C); Reporter's Partial Transcript of the Proceedings

25  (Instructions), dated January 11, 2007 (Exhibit D hereto); Reporter's Transcript of Proceedings (Voir Dire),

26  dated January 11, 2007 (Exhibit E hereto).

27      However, if the Court would like further briefing on this issue, Mr. Gomez would readily provide

28  it.

## IV.

## <u>MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT</u>

The above arguments to dismiss the indictment based on the government's failure to comply with Mr. Gomez's Fifth and Sixth Amendment rights is premised on <u>Covian-Sandoval</u> having read into section 1326 an additional element—a deportation that occurred at a particular time—that the government must plead to the grand jury and prove to a jury. To the extent the government argues that <u>Covian-Sandoval</u> did not create an additional element, the indictment contains surplusage. In other words, if the government argues that the <u>timing</u> of a person's deportation is not a element of section 1326, but rather a sentencing factor under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the Supreme Court has clearly held to be decided by a judge.

The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements beyond what is required under statute is surplusage and need not be proved at trial." <u>Bargas v. Burns</u>, 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999). Surplusage in an indictment is subject to being struck at the request of the defendant. <u>United States v. Fernandez</u>, 388 F.3d 1199, 1220-21 (9th Cir. 2004). In this case, if the government argues that the date of a person's deportation is not a required element of section 1326, the indictment contains language beyond that which is necessary to convict Mr. Gomez of violating section 1326. If the date of a person's deportation is not an element of section 1326, then the language in the indictment—" "It is further alleged that defendant SERGIO Gomez was removed from the United States subsequent to December 15, 2003."—is surplusage. So too is the government's allegation in the indictment that Mr. Gomez violated section 1326, subsection (b).

At one time, the Ninth Circuit considered subsection (b) of section 1326 a separate offense from subsection (a). See <u>United States v. Corona-Sanchez</u>, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*). This changed, however, following the Supreme Court's decision in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). See <u>Corona-Sanchez</u>, 291 F.3d at 1203. In <u>Almendarez-Torres</u>, the Supreme Court decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge, rather than a substantive offense. <u>See id.</u> Following <u>Almendarez-Torres</u>, the Ninth Circuit rethought the way in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)

1  struck to "unambiguously reflect that the defendant was convicted of only one punishable offense

2  pursuant . . .." Id.

3          Although an allegation of a particular date of deportation would likely be an appropriate response

4  on the government's part to the holding of Covian-Sandoval, the government here has chosen to include in

5  the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326.

6  Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the

7  indictment.  As Almendarez-Torres makes clear, however, Congress clearly intended findings under

8  subsection (b) of section 1326 to made by a judge, rather than a jury.  Almendarez-Torres, 523 U.S. at 235

9  ("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate

10  criminal offense).

11          Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended

12  a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland,

13  289 F.3d 558, 564-68 (9th Cir. 2002) (en banc) (discussing enhanced penalties under 21 U.S.C. § 841), it has

14  not seen fit to overrule the Supreme Court's decision in Almendarez-Torres.  See, e.g., United States v.

15  Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005).  For these reasons, to the degree the government argues

16  that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the

17  indictment an allegation that Congress intended to be decided by judge, rather than a jury.[3]  Therefore,

18  pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Gomez moves to strike this surplusage from the

19  indictment.

20  / / /

21  / / /

22  / / /

23  / / /

24  _____

25          [3]  The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of
26  section 1326 unconstitutional. In Covian-Sandoval, the Ninth Circuit held that a jury must determine
    the timing of a person's deportation to trigger subsection (b)'s enhanced statutory maximum.
27  Covian-Sandoval, 462 F.3d 1097-1098. In Almendarez-Torres, however, the Supreme Court held
    that Congress intended subsection (b) to be a sentencing provision to be determined by a judge.
28  Almendarez-Torres, 523 U.S. at 235.  It is thus clear that subsection (b), as written and construed
    by the Supreme Court, violates Apprendi.

**V.**

**MOTION TO PRODUCE GRAND JURY TRANSCRIPTS**

Mr. Gomez hereby moves this Court to compel the government to produce all grand jury transcripts in this case.  See U.S. CONST. AMENDS V & VI[4].  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Given the arguments raised above, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P 6(e)(3)(E)(ii).  Mr. Gomez requests the Court "authorize disclosure" of the grand jury transcript to allow Mr. Gomez to adequately prepare for trial and to perfect his appellate record.  See id.

**VI.**

**MOTION TO SUPPRESS STATEMENTS**

Mr. Gomez moves to suppress his statements on the grounds of an invalid Miranda waiver and voluntariness.

**A.**    **The Government Must Demonstrate Compliance with _Miranda_.**

In order for any statements made by Mr. Gomez to be admissible against him, the government must demonstrate that they were obtained in compliance with the Miranda decision. The government must establish that Mr. Gomez's waiver of his Miranda rights was voluntary, knowing, and intelligent.  See Schneckloth v.

---

[4] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law.  The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges.  'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.'  Costello v. United States, 350 U.S. 359, 362 (1956).  Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976).  In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government.  It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed.  Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation.  He is only called to read a report which has been prepared by others.  Such a practice does not allow for the considered judgment of grand jurors.  Thus, the release of transcripts is appropriate.

1   <u>Bustamonte</u>, 412 U.S. 218 (1973).  When interrogation continues without the presence of an attorney, and a

2   statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and

3   voluntarily waived his privilege against self-incrimination.  <u>Miranda</u>, 384 U.S. at 475.  The court must indulge

4   every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the

5   government is great.  <u>United States v. Heldt</u>, 745 F. 2d 1275, 1277 (9th Cir. 1984).

6         In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality

7   of the circumstances surrounding the case.  <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981); <u>United States v.</u>

8   <u>Garibay</u>, 143 F.3d 534 (9th Cir. 1998).  The Ninth Circuit has held that determination of the validity of a

9   <u>Miranda</u> waiver requires a two prong analysis:  the waiver must be both (1) voluntary and (2) knowing and

10   intelligent.  <u>Derrick v. Peterson</u>, 924 F. 2d 813 (9th Cir. 1990).  The second prong requires an inquiry into

11   whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and

12   the consequences of the decision to abandon it."  <u>Id.</u> at 820-821 (quoting <u>Colorado v. Spring</u>, 479 U.S. 564,

13   573 (1987)).  Not only must the waiver be uncoerced, then, it must also involve a "requisite level of

14   comprehension" before a court may conclude that <u>Miranda</u> rights have been legitimately waived. <u>Id.</u> (quoting

15   <u>Colorado v. Spring,</u> 479 U.S. at 573).  Unless and until <u>Miranda</u> warnings and a knowing and intelligent

16   waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used

17   against the defendant.  <u>Miranda</u>, 384 U.S. at 479.  The government in this case must prove that Mr. Gomez

18   waived his rights intelligently and voluntarily.  Mr. Gomez disputes any allegation any waiver was knowing,

19   intelligent, and voluntarily.

20   **B.**       **<u>The Court Must Suppress the "Field Statements".</u>**

21         **1.**       **<u>Mr. Gomez Was In Custody When Questioned.</u>**

22         Mr. Gomez was in custody when he was interrogated by Border Patrol agents and therefore <u>Miranda</u>

23   warnings were necessary.  <u>See</u> Exhibit B.

24         The safeguards of <u>Miranda</u> are required when the accused is questioned while in "custody or

25   otherwise deprived his freedom of action in a significant way."  <u>Miranda v. Arizona</u>,  384 U.S. 436, 444

26   (1966).

27         Whether an accused is in custody is measured by an objective standard.  <u>United States v. Beraun-</u>

28   <u>Panez</u>, 812 F.2d 578, 580 (9th Cir. 1987) (citing <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984)).  Further,

1   the court must determine if "under the totality of the circumstances, a reasonable person in such circumstances

2   would conclude after brief questioning [that] he or she would not be free to leave." Id. at 580 (internal

3   citations omitted.). Berkemer addressed the issue of whether a driver is in custody during a public traffic stop.

4   Berkemer held that the driver was not in custody, because the interrogation occurred "well away from the

5   public view, in a remote area where no passerby would likely be present."  Id.

6       In Beraun-Panez,  the defendant was stopped in a rural area, and officers questioned him by himself.

7   The officers then accused him of involvement in a recently committed crime.   The court reasoned that

8   although the defendant was not physically bound, he was psychologically restrained.   Specifically, the

9   defendant was subject to accusations and repeated questioning. The court held that the defendant was in

10  custody when interrogated.   The Ninth Circuit distinguished that case from Berkemer, because the

11  interrogation occurred "well away from the public view, in a remote area where no passerby would likely be

12  present."  Id. at 582.

13      United States v. Galindo-Gallegos,  244 F.3d 728 (9th Cir. 1987), held only that in cases where

14  suspects are questioned in public and in the open, it is not custodial for purposes of Miranda.  Galindo-

15  Gallegos, 244 F.3d at 732 ("there is not much risk . . . . because the public setting gives rise to a likelihood

16  of witnesses to any misconduct.").  In that case, Border Patrol agents rounded up twenty people suspected of

17  illegal entry into the United States.  The questioning occurred in an apparently public, albeit rural, location.

18  Id.

19      The Ninth Circuit has long recognized the use of a firearm is coercive and can constitute an arrest.

20  "Drawing a weapon is certainly an unequivocal show of authority by a police officer."  United States v.

21  Chan-Jimenez,125 F.3d 1324, 1327 (9th Cir. 1997).  In Chan-Jimenez, the court held that Officer's placing

22  is hand on his holstered weapon alone was enough to restrain a person's liberty to the point where they would

23  not feel free to leave.  Chan-Jimenez, 125 F.3d at 1327.  We agree with Chan-Jimenez that Officer Price's

24  request for permission to search the truck with one hand resting on his gun was implicitly coercive.").

25      In this case, Mr. Gomez was in custody as his freedom of action was greatly restrained.  Agent

26  Cortez pointed his baton at Mr. Gomez and ordered him not to move.  See Exhibit B.  Mr. Gomez did not

27  feel free to leave at this point. Id.  To the contrary, he feared that he would be hit if did not comply with

28  the armed agents' commands.  Id.  The agents were performing official duties by investigation

1   immigration and citizenship status.  The show of authority by Agent Cortez would give Mr. Gomez with

2   the impression that he was not free to leave.  <u>See</u> <u>United States v. Jerez</u>, 108 F.3d 684, 689 (7th Cir. 1997)

3   (holding that display of authority can lead to a finding of custody).

4          As in <u>Beraun-Panez</u>, Mr. Gomez was seized in an isolated and rural area, not open to the public

5   view.  The report of investigation report states that this apprehension occurred approximately 50 yards

6   from the United States/Mexico border, at approximately 9:00 a.m.  <u>See</u> Exhibit A at 2.  The remoteness of

7   location and hour reveal that there were not frequent passers-by at "Stewart's Bridge."  Therefore, the

8   assurance that the public gaze would deter police misconduct that was present in <u>Berkeme</u> is not present

9   in this case.  Also, like in <u>Beraun-Panez</u>, Mr. Gomez was confronted with accusations.  That is, a Border

10  Patrol agent's question of citizenship in a rural area near the US/Mexico border is tantamount to an

11  accusation of illegal entry in the least.  For that reason, this case is distinguishable from both <u>Berkemer</u>

12  and <u>Galindo-Gallegos</u>.  <u>Berkemer</u> involved a very public traffic stop.  And the <u>Galindo-Gallegos</u> court

13  stated that the stop was "public for the reason that mattered; no alien had reason to fear abuse by an officer

14  and an unscrupulous officer would have been deterred from using illegitimate means by all the witnesses

15  . . . . The public setting gives rise to a likelihood of witnesses to any misconduct."  <u>Galindo-Gallegos</u>, 244

16  F.3d at 732.  Moreover, there were twenty suspects apprehended in <u>Galindo-Gallegos</u> which apparently

17  contributed to the court's finding of publicity.  However, in this case, Mr. Gomez was arrested all by

18  himself.  <u>See</u> Exhibit A at 2.  Mr. Gomez was also only nineteen years of age at the time of this arrest.

19  The facts submitted by the government demonstrate that Mr. Gomez "would conclude [that] after  brief

20  questioning he or she would not be free to leave"[5] and thus was in custody.  <u>United States v. Hudgens</u>, 798

21  F.2d 1234, 1236 (9th Cir. 1986) (quoting <u>Booth</u>, 669 F.2d at 1231).

22         Moreover, the display of authority in this case was even more coercive than that of <u>Chan-</u>

23  <u>Jimenez</u>, because the agent in this case actually pointed his weapons at Mr. Gomez.  <u>See</u> <u>Chan-Jimenez</u>,

24  125 F.3d at 1327.

25

26

27  _____
          [5]

28         If the Court disagrees with this assertion, Mr. Gomez requests an evidentiary
    hearing to support this position.

1    Mr. Gomez was seized by a Border Patrol agent, who brandished a weapon, in a rural and

2    isolated location, in a small group, and was virtually accused of at least the crime of illegal entry and

3    therefore was in custody for purposes of Miranda.

4    **2.    Miranda Warnings Must Precede Questions to Essential Elements of a Crime.**

5

6    Agents that suspect individuals of illegal entry must give Miranda warnings before asking them

about citizenship.

7

8    Ninth Circuit law is clear that when agents are investigating a potential immigration related

offense, Miranda warnings must be given before they ask questions of citizenship, as that is an essential

9    element of several crimes.

10

11    United States v. Mata-Abundiz, 717 F.2d 1277 (9th Cir. 1983), held that an INS agent's failure to

give Miranda warnings to a defendant before asking his citizenship rendered his answers inadmissable. In

12    that case, the defendant was arrested for unlawful possession of a firearm. An INS agent then questioned

13    the defendant about his citizenship. The Ninth Circuit held that because the agent knew that it is a crime

14    for an alien to possess a firearm[6], a question of citizenship was likely to elicit an incriminating response.

15    "[The agent] had reason to know that any admission of alienage by Mata would be highly incriminating."

16    Mata-Abundiz, 717 F.2d at 1279.

17    Similarly, United States v. Chen, 439 F.3d 1037 (9th Cir. 2006) held that when someone is

18    facing the risk of prosecution for 8 U.S.C. § 1325, questions of alienage are interrogation for Miranda

19    purposes.

20    In Chen, agents were investigating possible alien smuggling. The Ninth Circuit found, based on

21    the agent's testimony at the suppression hearing, the defendant "was subject to a heightened risk of a [8

22    U.S.C.] § 1325 prosecution." Chen, 439 F.3d at 1042. That, coupled with that district's practice of

23    prosecuting § 1325 violation "rendered [the agent's] questioning of Chen an interrogation for Miranda

24    purposes." Id. See also United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981)(holding that the test

25    for determining whether questioning constitutes "interrogation" should be analyzed under a totality of the

26    circumstances standard).

27

28

---

[6]    18 U.S.C.App. §1202 (1976)

1  United States v. Gonzalez-Sandoval, 894 F.2d 1043 (9th Cir. 1990), similarly held that Border

2  Patrol agents' questioning of defendant about his place of birth and immigration status violated Miranda.

3  In Gonzalez-Sandoval, the defendant was suspected of--amongst other things--being a deported

4  alien.  A Border Patrol agent then asked the defendant as to his place of birth, immigration status, and

5  aliases without advising him of his Miranda rights.  The court held that because the Border Patrol agent

6  "has reason to suspect that Gonzalez-Sandoval was in this country illegally, and the questions he posed

7  were "reasonably likely" to elicit responses which would substantiate the charge that Gonzalez-Sandoval

8  had violated 8 U.S.C. § 1326."  Gonzalez-Sandoval, 894 F.2d at 1047.  Thus, the statements were

9  obtained in violation of Miranda.

10  In this case, Mr. Gomez was suspected of being in the United States illegally.  Thus, when Agent

11  Cortez suspected Mr. Gomez of illegal entry, and then proceeded to ask question him about citizenship

12  and immigration status,  those questions were likely to elicit an incriminating response.  See Rhode Island

13  v. Innis, 446 U.S. 291 (1980).

14  In conclusion, Mr. Gomez was in custody and asked questions that were likely to elicit

15  incriminating answers, without being advised of his Miranda warnings and therefore the statements

16  allegedly made in response to those questions should be suppressed.

17  **C.      Mr. Gomez's Statements Must Be Voluntary.**

18  Even if this Court determines that Mr. Gomez validly waived his Miranda rights, it must still make

19  a determination that any statements are voluntary.  Mr. Gomez has made a showing that any field statements

20  were not voluntary.  See Exhibit  Under 18 U.S.C. § 3501(a), this Court is required to determine, whether any

21  statements made by Mr. Gomez are voluntary.  In addition, section 3501(b) requires this Court to consider

22  various enumerated factors, including whether Mr. Gomez understood the nature of the charges against him

23  and whether he understood his rights.  Without such evidence, this Court cannot adequately consider these

24  statutorily mandated factors.

25  Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual

26  determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings.  See United States

27  v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important

28  as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be

1  supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's

2  responsive pleading.

3        Mr. Gomez moves for the production of the following discovery. This request is not limited to those

4  items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control,

5  care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868

6  F.2d 1032 (9th Cir. 1989).

7                           **VI.**

8            **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

9        First, Mr. Gomez requests that this Court order the government to allow Mr. Gomez to view the A-

10  file. See FED. R. CRIM. P. 16(a)(1)(E). Second, Mr. Gomez requests the government to produce the list of all

11  the people that were removed on March 3, 2008 at San Ysidro. See id. Third, Mr. Gomez requests the

12  information regarding the two other individuals referenced in Agent Glance's report, who were also arrested.

13  See Exhibit A at 2.

14        Additionally, Mr. Gomez incorporates, by reference, his discovery request made in his motion filed

15  May 12, 2008.

16                           **VII.**

17            **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

18        Mr. Gomez has not received the audio cassette from the alleged deportation, nor has he viewed

19  the A-File. After he does, Mr. Gomez will need to file additional motions accordingly. He requests leave

20  to do so.

21                      Respectfully submitted,

22  DATED:      May 27, 2008             _/s/ Erick L. Guzman_
                                                  ERICK L. GUZMAN

23                            Federal Defenders of San Diego, Inc.
                          Attorneys for Luis Gomez

24                            erick_guzman@fd.org

25

26

27

28