KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR1003-WQH |
|---|---|---|
| Plaintiff, | ) | HEARING DATE:    June 9, 2008 |
| | ) | TIME:               2:00 p.m. |
| v. | ) | UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS: |
| LUIS MANUEL GOMEZ-DOMINGUEZ, | ) | (1)    COMPEL DISCOVERY/PRESERVE EVIDENCE; |
| Defendant. | ) | (2)    DISMISS DUE TO FAILURE TO ALLEGE ALL ELEMENTS; |
| | ) | (3)    DISMISS DUE TO GRAND JURY INSTRUCTIONS; |
| | ) | (4)    STRIKE SURPLUSAGE; |
| | ) | (5)    PRODUCE GRAND JURY TRANSCRIPT; |
| | ) | (6)    SUPPRESS FIELD STATEMENTS; AND |
| | ) | (7)    FOR LEAVE TO FILE FURTHER MOTIONS. |

TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES

1    COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2   KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States

3   Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions. This

4   Response and Opposition is based upon the files and records of the case together with the attached

5   statement of facts and memorandum of points and authorities.

6                                              **I**

7                              **STATEMENT OF THE CASE**

8    On April 2, 2008, a federal grand jury in the Southern District of California returned an

9   Indictment charging Defendant Luis Manuel Gomez-Dominguez ("Defendant") with being a deported

10  alien attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326.  On April 3,

11  2008, Defendant was arraigned and entered a not guilty plea.  The Court set a motion hearing date for

12  May 12, 2008.

13   On April 7, 2008, the United States filed a motion for reciprocal discovery and fingerprint

14  exemplars.  On May 12, 2008, the Court granted reciprocal discovery and continued the motion for

15  fingerprint exemplars so that defense counsel could file a written opposition. The Court continued the

16  hearing to June 9, 2008.

17   On May 12, 2008, Defendant filed a discovery motion.  On May 27, 2008, Defendant filed

18  motions to compel discovery, suppress various evidence, dismiss the indictment on various grounds,

19  strike the date allegation in the Indictment as surplusage, and for leave to file further motions.  The next

20  day Defendant filed a series of exhibits.  The United States now responds.

21                                             **II**

22                             **STATEMENT OF FACTS**

23  **A.      The Instant Offense**

24   On Tuesday, March 4, 2008, at approximately 9:05 a.m., Field Operations Supervisor Adan

25  Cortez was performing his duties west of the San Ysidro, California, Port of Entry.  A border patrol

26  agent alerted FOS Cortez via service radio that the agent observed three individuals walking north from

27  the secondary fence.  The location described is about 1.5 miles west of the San Ysidro, California, Port

28

1   of Entry and about 50 yards north of the border fence.  This area is notorious for the entry of

2   undocumented aliens.  FOS Cortez responded to the call.

3          When FOS Cortez arrived, he observed Defendant lying in the brush.  FOS Cortez approached

4   Defendant, identified himself as a Border Patrol agent, and asked Defendant routine immigration

5   questions.  Defendant freely admitted that he was a citizen of Mexico with no legal right to enter the

6   United States.  About ten minutes after Defendant's arrest, with the assistance of additional agents, the

7   remaining two individuals were found.  All three individuals admitted to being citizens of Mexico with

8   no legal right to enter the United States.  All three were detained and transported to the Imperial Beach

9   Border Patrol station for processing.

10         At the station, Defendant was entered into the Automated Biometric Identification System.  This

11  provided Defendant's true identity and some of his prior criminal and immigration histories.

12         At approximately 1:42 p.m., while being video taped, Agent Ryan Bean advised Defendant in

13  the Spanish language of his communication rights with the Mexican Consulate as witnessed by Agent

14  Damond Foreman.  Defendant stated that he understood this right and wished to speak with the

15  consulate.  The Agents provided Defendant the opportunity to do so.

16         At approximately 1:45 p.m., while being video taped, Agent Bean advised Defendant in the

17  Spanish language of his Miranda warnings as witnessed by Agent Foreman.  Defendant stated that he

18  understood his rights and waived his right to remain silent. Defendant was also advised that his

19  administrative rights did not apply and that he was being charged criminally.

20         Defendant admitted to the following: (1) being a citizen of Mexico with no legal right to enter

21  the United States; (2) being previously deported; and (3) heading to Los Angeles to work.  At the

22  conclusion of the interview, Defendant signed a Record of Sworn Statement

23         **B.    Defendant's Criminal and Immigration History**

24         Defendant was convicted on February 8, 2007, of sexual indecency with a minor, in violation

25  of Arkansas Code § 5-14-110(a)(1) and received 120 days in jail. He was convicted on February 29,

26  2008 of false statement to a federal officer, in violation of 18 U.S.C. § 1001 and received time served.

27

28

1  Concerning his immigration history, on April 9, 2007, Defendant was ordered deported.  On

2  April 24, 2007, September 24, 2007, and March 3, 2008, he and was physically removed from the

3  United States to Mexico.

**III**

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

6  The United States has and will continue to fully comply with its discovery obligations under

7  Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), Rule 16 of the Federal Rules

8  of Criminal Procedure, and Rule 26.2 of the Federal Rules of Criminal Procedure.  The United States

9  has already delivered 75 pages and one DVD of discovery to defense counsel including investigative

10  reports and Defendant's statements on March 4, 2008.  Nevertheless, Defendant makes a series of

11  discovery requests.  The following is the United States' response to Defendant's requests.

12  Initially, Defendant request additional discovery concerning the deportation tape, any statements

13  made by Defendant, and the Alien Registration File ("A-File") associated with Defendant.  The United

14  States has requested any deportation tapes associated with Defendant and will produce them (if they

15  exist) when they arrive (despite it being equally available to Defendant).  The United States has

16  produced Defendant's statement for his March 4, 2008 arrest.  The United States will continue to

17  produce discovery related to Defendant's statements made in response to questions by agents.

18  Regarding the A-File request, the United States objects to this request.  Even if Defendant could

19  not ascertain the A-File information he seeks from the immigration court or another source, the A-File

20  is not Rule 16 discoverable information.  The A-File contains information that is not discoverable like

21  internal government documents and witness statements.  See Fed. R. Crim. P. 16(a).  Witness statement

22  would not be subject to production until after the witness testifies and a motion is made by Defendant.

23  See Fed. R. Crim. P. 26.2.  Thus, the A-File associated with Defendant need not be disclosed.

24  Defendant claims that the A-File must be disclosed because (1) it may be used in the United

25  States' case-in-chief; (2) it material to his defense; and (3) it was obtained from or belongs to him.  The

26  United States will turn over documents it intends to use in its case-in-chief.  Evidence is material under

27  Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the

28  proceeding would have been different.  United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

However, Defendant has not shown how documents in the A-File are material. Finally, Defendant does not own the A-File. It is an agency record. Cf. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Should the Court order disclosure of the A-File, the United States will comply as it does in other cases.

Defendant also requests production of "all the people that were removed on March 3, 2008 at San Ysidro" and "information regarding the two other individuals referenced in Agent Glance's report." Until there is some showing that this information is discoverable, the United States opposes this request.

### 1.    Statements of Defendant

The United States has already produced reports disclosing the substance of Defendant's oral and written statements. The United States will continue to produce discovery related to Defendant's statements made in response to questions by agents. Relevant oral statements of Defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

### 2.    Arrest Reports and Notes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

### 3.    Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

1  or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>, 611

2  F.2d 770 (9th Cir. 1980), it must be noted that:

3       [T]he prosecution does not have a constitutional duty to disclose every bit of information
     that might affect the jury's decision; it need only disclose information favorable to the

4       defense that meets the appropriate standard of materiality. [Citation omitted.]

5  <u>Id.</u> at 774-775.

6       The United States will turn over evidence within its possession which could be used to properly

7  impeach a witness who has been called to testify.

8       Although the United States will provide conviction records, if any, which could be used to

9  impeach a witness, the United States is under no obligation to turn over the criminal records of all

10  witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

11  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

12  chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d

13  1305, 1309 (9th Cir. 1979).

14       Finally, the United States will continue to comply with its obligations pursuant to <u>United States</u>

15  <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

16       4.   <u>Sentencing Information</u>

17       Defendant claims that the United States must disclose any information affecting Defendant's

18  sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83

19  (1963). The United States respectfully contends that it has no such disclosure obligation.

20       The United States is not obligated under <u>Brady</u> to furnish a defendant with information which

21  he already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). <u>Brady</u> is a rule of

22  disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the

23  defendant. In such case, the United States has not suppressed the evidence and consequently has no

24  <u>Brady</u> obligation. <u>See United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

25       But even assuming Defendant does not already possess the information about factors which

26  might affect his guideline range, the United States would not be required to provide information bearing

27  on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

28  to his sentencing date. <u>See United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No

1  [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

2  remains in value."). Accordingly, Defendant's demand for this information is premature.

3      5.    Defendant's Prior Record

4      The United States has already provided Defendant with a copy of his criminal record in

5  accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

6      6.    Proposed 404(b) Evidence

7      Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

8  of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of

9  such evidence and information about such bad act at the time the United States' trial memorandum is

10  filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce

11  Defendant's prior immigration contacts and sexual indecency and false statement convictions as

12  evidence of intent to enter the United States, alienage, prior deportation, and lack of application for

13  admission. Moreover, Defendant's sexual indecency and false statement conviction listed in the

14  criminal history section above will be introduced to impeach him should he testify.

15      7.    Evidence Seized

16      The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant

17  an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within

18  the possession, custody or control of the United States, and which is material to the preparation of

19  Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were

20  obtained from or belong to Defendant, including photographs.

21      The United States, however, need not produce rebuttal evidence in advance of trial. United

22  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

23      8.    Preservation of Evidence

24      The United States will preserve all evidence to which Defendant is entitled to pursuant to the

25  relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve

26  all physical evidence. For example, Defendant requests preservation of narcotics. What narcotics?

27      The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant

28  an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within

his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

9.    Henthorn Material

The United States will review the personnel files of all underline federal law enforcement individuals who will be called as witnesses in this case for Brady material. Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

10.    Tangible Objects

Again, the United States is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

11.    Expert Witnesses

Defendant requests written reports and summaries of any expert testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(G). The United States will disclose to Defendant the name,

qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

At trial, the United States will offer the testimony of a Fingerprint Expert to establish Defendant's identity and prior history.  The United States will provide a summary, and qualifications of the expert when they are available.

Although not expected to give expert opinions based upon specialized knowledge, the United States will also offer the testimony of a records custodian to introduce documents from Defendant's A-File.  See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".).  This testimony will consist of explaining the purpose of the A-File, what documents are contained within the A-File, and the purpose of those documents.

12-13.  Impeachment and Evidence of Criminal Investigation

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977).  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

14.     Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant.  The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

1    15.    <u>Evidence Affecting Perception</u>

2    The United States is unaware of any evidence indicating that a prospective witness has a

3    perception, recollection, communication, or truth telling problem.

4    16.    <u>Witness Addresses</u>

5    The United States will provide Defendant with a list of all witnesses which it intends to call in

6    its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a

7    list is not required.  <u>See</u> <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>,

8    806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant,

9    however, is not entitled to the production of addresses or phone numbers of possible witnesses of the

10   United States.   <u>See</u> <u>United States v. Hicks</u>, 103 F.3d 837, 841 (9th Cir. 1996); <u>United States v.</u>

11   <u>Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977).  Defendant has already received access to the names of

12   potential witnesses in this case in the investigative reports previously provided to him.

13   17.    <u>Witnesses Favorable to Defendant</u>

14   The United States is not aware of any witness who made a favorable statement concerning

15   Defendant.

16   18.    <u>Statements Favorable to Defendant</u>

17   The United States is not aware of any witness who made a favorable statement concerning

18   Defendant.

19   19.    <u>Jencks Act Material</u>

20   As stated previously, the United States will comply with its obligations pursuant to <u>Brady v.</u>

21   <u>Maryland</u>, 373 U.S.  83 (1963), <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and the Jencks

22   Act.

23   20.    <u>Giglio Information</u>

24   As stated previously, the United States will comply with its obligations pursuant to <u>Brady v.</u>

25   <u>Maryland</u>, 373 U.S.  83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991),

26   and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

27   / / /

28   / / /

9                                      08CR1003-WQH

21.     Agreements Between the United States and Witnesses

The United States is unaware of any agreements between the United States and any witness who may testify.

22-23.  Informants and Cooperating Witnesses

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case.  Rather, the United States Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause.  Id. at 60-61.  Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454.  As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclosure, at this point in the case.

That being said, the United States is unaware of the existence of an informant in this case.  However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required.  See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977).  Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

24.     Personnel Records of Officers Involved in the Arrest

The United States objects to this request.  Defendant has not shown how any personnel records of the arresting officers are relevant to this case.  Defense counsel has no constitutional right to conduct a search of agency files to argue relevance.  See Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987)

(citing <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and <u>Brady</u> did not create one")). Thus, the United States will review these records for impeachment information, but will not provide these records as Rule 16 discovery.

To support his request, Defendant cites <u>Pitchess v. Superior Court</u>, 11 Cal.3d 531, 539 (1974). In <u>Pitchess</u>, the California Supreme Court was addressing California Evidence Codes which permit the disclosure of public entity personnel records provided that certain requirements are followed.  <u>Id.</u> However, no such code exists under the Federal Rules of Evidence.

25.    The A-File

As addressed previously, the United States objects.  However, the United States will make the A-File available if ordered to do so.

26.    Reports of Scientific Tests or Examinations

The United States will comply with its obligations pursuant to Rule 16.  At trial, the United States intends to offer testimony of a fingerprint expert to identify Defendant as the person who was previously deported. The United States will provide the qualifications of the experts, if any. The United States will provide a summary of his report when it is available.

27.    Residual Requests

The United States objects to any such request.  The United States has and will continue to comply with its discovery obligations.

**IV**

**DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED**

**A.    The Challenge For Failure to Allege All Elements is Without Merit**

Defendant argues that the Indictment must be dismissed since it fails to allege either that Defendant has been previously removed subsequent to a conviction or the specific date of his prior removal.  For reasons stated in the case he cites, this argument is without merit.

In <u>United States v. Salazar-Lopez</u>, 506 F.3d 748, 752 (9th Cir. 2007), the Ninth Circuit held that <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), bars a defendant convicted under 8 U.S.C. § 1326 from having his statutory maximum sentence increased for prior convictions, unless the indictment alleges "the date of the removal, or at least the fact that Salazar-Lopez had been removed after his

1    conviction." Here, the Indictment alleges the fact that Defendant "was removed from the United States

2    subsequent to September 29, 2007." The date alleged establishes the temporal relationship that he was

3    removed after his conviction in February of 2007. Thus, no elements are missing.

4           Next, Defendant argues that the Indictment should be dismissed because the United States failed

5    to allege voluntary entry, an entry, and the proper mens rea. These arguments, however, are in direct

6    conflict with binding precedent which Defendant failed to even cite. In <u>United States v. Rivera-Sillas</u>,

7    the Ninth Circuit addressed and denied a <u>mens</u> <u>rea</u> argument similar to Defendant's holding that the

8    United States need not allege any mens rea in an indictment under § 1326. 376 F.3d 887, 890-93 (9th

9    Cir. 2004) ("That clause [§ 1326] does not require the indictment to specifically state that the defendant

10   alien voluntarily entered the United States."); <u>id.</u> at 892 (holding that the United States "need not plead

11   and prove entry in order to charge or convict an alien with a § 1326 'found in' crime."); <u>id.</u> at 893

12   (holding that an indictment under § 1326 need not allege knowledge because the "general intent of the

13   defendant to reenter the United States may be inferred from the fact that the defendant was previously

14   deported and subsequently found in the United States."); <u>see also</u> <u>United States v. Bahena-Cardenas</u>,

15   411 F.3d 1067, 1073-74 (9th Cir. 2005). Therefore, Defendant's motion to dismiss the indictment for

16   failure to allege voluntary entry, entry, and mens rea should be denied.

17           **B.    The Challenge For Failure to Present All Elements is Without Merit**

18           Defendant challenges the Indictment arguing that the face of the Indictment does not indicate

19   whether the grand jury considered all the facts supporting the deportation element or which (if any)

20   deportation the United States presented to the grand jury. Defendant begins by assuming that a

21   deportation has the following elements: "(1) that a deportation proceeding occurred as the [the]

22   defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal

23   of the defendant from the United States." <u>United States v. Castillo-Basa</u>, 483 F.3d 890 (9th Cir. 2007).

24   Defendant's first challenge rests on a flawed assumption. The United States is not required to prove to

25   a jury beyond a reasonable doubt the deportation process described in <u>Castillo-Basa</u>. Rather, the United

26   States need only show physical removal. <u>United States v. Zepeda-Martinez</u>, 470 F.3d 909, 913 (9th Cir.

27   2006) ("[t]his warrant is sufficient alone to support a finding of removal beyond a reasonable doubt.").

28

1    Second, as noted previously, the Indictment alleges that Defendant "was removed from the

2    United States subsequent to April 14, 2006." The temporal relationship between Defendant's removal

3    and his conviction is satisfied by this allegation. Thus, as recognized in Salazar-Lopez, the United

4    States need not allege a specific date of deportation. Accordingly, Defendant's challenge due to failure

5    to present what is nonessential information to the grand jury should be denied.

6                                                      V

7          **DEFENDANT'S MOTION TO STRIKE THE TEMPORAL ALLEGATION**

8                                       **SHOULD BE DENIED**

9    Defendant requests that the Court strike the temporal allegation in the Indictment removal.

10   However, the allegation is consistent with the requirements in United States v. Salazar-Lopez, 506 F.3d

11   748 (9th Cir. 2007). Thus, the temporal allegation should not be stricken.

12                                                     VI

13                      **THE GRAND JURY WAS PROPERLY INSTRUCTED**

14   In addition to challenges previously rejected by the Ninth Circuit, Defendant makes two

15   challenges contentions relating to instructions given to the grand jury during its impanelment by District

16   Judge Larry A. Burns. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas,

17   408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the grand jury instructions constitutional,

18   Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so

19   doing rendered them improper warranting dismissal of the Indictment.

20   In making his arguments concerning the instructions Defendant urges this Court to dismiss the

21   Indictment on two separate bases relating to grand jury procedures, both of which were discussed in

22   United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction,

23   Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand

24   jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing

25   United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness

26   from its constituting court, it should come as no surprise that we have been reluctant to invoke the

27   judicial supervisory power as a basis for prescribing modes of grand jury procedure."). Isgro reiterated:

28           [A] district court may draw on its supervisory powers to dismiss an indictment.
             The supervisory powers doctrine "is premised on the inherent ability of the federal

                                                    13                    08CR1003-WQH

courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. Concerning that kind of a contention <u>Isgro</u> stated:

[A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'" 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" <u>Id.</u>

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

Any instruction that Assistant United States Attorneys are duty-bound to present evidence that cuts against returning an indictment is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it." (emphasis added)); see also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) (" . . . prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury. As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[1] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

---

[1]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

(Emphasis added.)[2/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[3/]

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. If "substantial" exculpatory evidence exists, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  There is nothing wrong with a grand juror inferring that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does

---

[2/]  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, as the District Judge overseeing the grand jury, he could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[3/]  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E."  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

not require dismissal of the indictment. 974 F.2d at 1096 ("<u>Williams</u> clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not render the instructions unconstitutional. The grand jurors were instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by <u>Navarro-Vargas</u>. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by <u>Navarro-Vargas</u>. 408 F.3d at 1207. In this context, the unnecessary "duty-bound" statement does not render the instructions constitutionally defective requiring dismissal of this Indictment.

The "duty bound" statement does not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." <u>Isgro</u>, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

## VII

## <u>THE MOTION TO PRODUCE GRAND JURY TRANSCRIPTS SHOULD BE DENIED</u>

Defendant moves for production of the grand jury transcripts based upon speculation about what might have happened. His motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. <u>United States v. Walczak</u>, 783 F.2d 852, 857 (9th Cir. 1986); <u>United States v. Murray</u>, 751 F.2d 1528, 1533 (9th Cir. 1985). Defendant has not shown a particularized need.

Defendant simply speculates that the instructions to the grand jury might be deficient, and might provide a basis for further motions. However, the Ninth Circuit has held that there is no constitutional right to have any legal instruction provided to the grand jury, <u>United States v. Kenny</u>, 645 F. 2d 1323, 1347 (9th Cir. 1981), so obtaining the grand jury instructions would not in any way help "to avoid a

possible injustice" in another legal proceeding, as required under the test set forth by the Supreme Court, in the case of <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441, U.S. 211, 222 (1979). As the Supreme Court has stated, "an indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on its merits." <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956).

Moreover, it is well settled that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused. <u>See</u> <u>United States v. Mandujano</u>, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); <u>United States v. Calandra</u>, 414 U.S. 338, 343 (1974); <u>United States v. Blue</u>, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); <u>Lawn v. United States</u>, 355 U.S. 339 (1958); <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); <u>see also</u> <u>Reyes v. United States</u>, 417 F.2d 916, 919 (9th Cir. 1969); <u>Johnson v. United States</u>, 404 F.2d 1069 (9th Cir. 1968); <u>Wood v. United States</u>, 405 F.2d 423 (9th Cir. 1968); <u>Huerta v. United States</u>, 322 F.2d 1 (9th Cir. 1963).

The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role. <u>See</u> <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184, 1188-1201 (9th Cir. 2005). Tracing the history of the grand jury from English common law, the Supreme Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. <u>See Costello</u>, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. <u>Id.</u>

Besides Defendant's speculation, there is no basis upon which to dismiss the Indictment due to improper conduct before the grand jury. As such, his request for transcripts should be denied.

/ / /

/ / /

/ / /

1

## VIII

2

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED

3    Defendant moves to suppress his statements.  Defendant argues that his field statements should

4    be suppressed because he was in custody.

5    ### A.    Defendant's Motion Should Be Denied Without a Hearing

6    The Court should deny Defendant's motion to suppress without a hearing.  Under Ninth Circuit

7    and Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary

8    hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the

9    granting of Defendant's motion.  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where

10   "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer,

11   . . . . the district court was not required to hold an evidentiary hearing").

12   Here, in clear opposition to Local Rule 47.1(g), Defendant has failed to attach a declaration

13   creating an issue of fact regarding Defendant's field admission or post-arrest Miranda waiver.  As such,

14   this Court should deny Defendant's motion to suppress, based on the Statement of Facts attached to the

15   Complaint in this case, that all of Defendant's statements were voluntarily made.

16   ### B.    Defendant's Pre-arrest Statements Should Not Be Suppressed

17   Defendant argues that his statements made prior to his arrest were made while in custody.  In

18   Miranda v. Arizona, 396 U.S. 868 (1969), the Supreme Court held that under the Fourth Amendment

19   a person must be advised of his rights prior to incriminating questioning after custodial arrest.

20   Defendant's arguments are merit less for three reasons.  First, Defendant was not in custody when he

21   was questioned.  Second, Defendant was not subjected to incriminating questioning while in custody.

22   Third, if Defendant was subjected to a stop, reasonable suspicion supported the stop.

23   #### 1.    A Reasonably Innocent Person Would Feel Free to Leave After Questioning

24   First, to determine whether a person is in custody for purposes of Miranda, a court looks to the

25   circumstances surrounding the interrogation.  United States v. Bravo, 295 F.3d 1002 (9th Cir. 2002)

26   ("whether an invididual in custody depends upon the objective circumstances of the situation, or

27   whether "'a reasonable innocent person . . . would conclude that after brief questioning he or she would

28

1  not be free to leave.""'"). Since Defendant was not in custody during his initial questioning, there was

2  no need for <u>Miranda</u> warnings.

3       Defendant argues that he was in custody when told to stop. However, it is well settled that a law

4  enforcement officer, like anyone else, may approach another person in a public place and ask questions.

5  "[T]he Fourth Amendment permits police officers to approach individuals at random in airport lobbies

6  and other public places to ask them questions and to request consent to search their luggage, so long as

7  a reasonable person would understand that he or she could refuse to cooperate." <u>Florida v. Bostick</u>, 501

8  U.S. 429, 431 (1991). This rule "applies equally" to police encounters that take place on trains, planes,

9  buses, and "city streets." <u>Id.</u> at 438, 439-40.

10      The fact that the law enforcement officer identifies himself as such does not convert the

11  encounter into a seizure. <u>Florida v. Royer</u>, 460 U.S. 491, 497-98 (1983). Nor does the fact that he wears

12  a gun or uniform or displays a badge. <u>United States v. Drayton</u>, 536 U.S. 194, 204-205 (2002); <u>Bostick</u>,

13  501 U.S. at 432. The person approached may decline to talk, may choose to leave, <u>Royer</u>, 460 U.S. at

14  497-98, or may "disregard the police and go about his business." <u>California v. Hodari D.</u>, 499 U.S. 621,

15  626-67 (1991). A person is not "seized" under the Fourth Amendment unless, under all the

16  circumstances, a reasonable (innocent) person would have believed that he was not free to leave. <u>United</u>

17  <u>States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). If there is no detention, there is no seizure, no need

18  for reasonable suspicion, and no Fourth Amendment violation. <u>Royer</u>, 460 U.S. at 497-98; <u>Terry v.</u>

19  <u>Ohio</u>, 392 U.S. 1, 19, n.16 (1968). The Supreme Court has applied this rule in a "long, unbroken line

20  of decisions dating back more than 20 years." <u>Bostick</u>, 501 U.S. at 439.

21                          a.    <u>Supreme Court Authority on Consensual Encounters</u>

22       This "long, unbroken line of decisions" controls this case and compels the conclusion that there

23  was no seizure here. The following Supreme Court cases examine consensual public encounters on

24  buses, in the workplace, in airports, or on the street and hold that there is no seizure where there is no

25  physical stop, no detention, and no coercion.

26       In <u>Immigration and Naturalization Service v. Delgado</u>, 466 U.S. 210 ( 1984), the Supreme Court

27  held there was no seizure when Immigration and Naturalization Service ("INS") agents visited factories

28  and questioned employees to determine whether they were illegal aliens. <u>Id.</u> at 211-12. During the

1  encounter, several agents positioned themselves near the building exits, while other agents--with badges,

2  walkie-talkies and guns-- moved throughout the factory and questioned the workers. Id.  If the worker

3  gave a credible reply that he was a United States citizen, the questioning ended.  If the worker gave an

4  unsatisfactory response, the agent asked further questions.  Id. at 212-13.

5  Noting that the Fourth Amendment "does not proscribe all contact between the police and

6  citizens," only "arbitrary and oppressive interference," id. at 215, the Court said that "police

7  questioning, by itself, is unlikely to result in a Fourth Amendment violation." Id. at 216.  The fact that

8  "most citizens will respond to a police request . . . and do so without being told they are free not to

9  respond, hardly eliminates the consensual nature of the response."  Id. (citing Schneckloth v.

10  Bustamonte, 412 U.S. 218 ( 1973)).

11  In Mendenhall, 446 U.S. 544, a plurality of the Supreme Court first discussed whether

12  Mendenhall was "seized" when approached by Drug Enforcement agents at the airport and asked

13  questions.[4/]  As stated by the Court:

14  "[o]bviously, not all personal intercourse between policemen and citizens involves
   'seizures' of persons. Only when the officer, by means of physical force or show of
15  authority, has in some way restrained the liberty of a citizen may we conclude that a
   'seizure' has occurred."

16

17  Id. at 552 (quoting Terry, 392 U.S. at 19, n.16).  The Court then discussed the "seizure" in Terry, where

18  the police officer grabbed Terry, spun him around, and patted down his clothing, while noting that

19  apparently no seizure had taken place before Terry was grabbed.  Id. at 553-54.

20  The Court in Mendenhall also discussed Brown v. Texas, 443 U.S. 47, 49 (1979), noting that

21  Brown was not "seized" when approached by two police officers in an alley, asked to identify himself,

22  and asked to explain why he was there.  Mendenhall, 446 U.S. at 556.  But after Brown refused to

23  identify himself and angrily told the officers that they had no right to stop him or question him, the

24  officers frisked him and arrested him for refusing to give his name when "lawfully stopped." Id.  There

25  was a seizure at this point.

26

27  [4/]This part of the opinion was written by Justice Stewart and joined by Justice Rehnquist.  Chief
   Justice Burger, Justice Blackmun, and Justice Powell concurred in the judgment, while noting that
28  "(they) did not necessarily disagree with the views expressed in Part II-A" (on the initial seizure issue),
   but the question was "extremely close" given that Mendenhall produced her license and airline ticket.
   Id. at 560 n.1.

1

b.    Ninth Circuit Case Law on Consensual Encounters

2

Relying on the Supreme Court cases discussed above, the Ninth Circuit has similarly held that

3

police encounters in airports and on the street and highway do not constitute seizures without

4

Government coercion.  In United States v. Kim, 25 F.3d 1426 (9th Cir. 1994), this Court stated that

5

"[a]bsent indicia of force or aggression, a request for identification or information is not a seizure or

6

investigatory stop."  Id. at 1430.  The Ninth Circuit held that there was no stop or seizure when two

7

police officers asked the occupants to get out of their parked car,[5/] separated them for questioning, and

8

the officers' car partially blocked Kim's vehicle.  Id. at 1428-36.[6/]

9

Similarly, in United States v. Woods, 720 F.2d 1022 (9th Cir. 1983), Deputy Lundsford,

10

accompanied by two other police officers, walked up to Woods and Goldstein, in the cocktail lounge

11

of an airport.  Deputy Lundsford identified themselves as police officers, told them they were

12

investigating a possible narcotics transaction, asked for identification, and asked them some questions.

13

Id. at 1025.  Relying on Florida v. Royer, 460 U.S. 491 (1983), the Ninth Circuit went on to hold that

14

the statements were voluntary responses to permissible and limited questions prior to any physical

15

detention of seizure of their persons, and therefore the Fourth Amendment was not violated.  Id. at 1026.

16

Finally, the fact that the officers may have detained them if they tried to leave was irrelevant.  Id.

17

c.    Defendant was Not Seized

18

As the report attached to Defendant's motion states, Defendant was already stopped laying on

19

the ground.  Defendant's declaration does not contest that he was already stopped.  Rather, he alleges

20

that FOS Cortez pointed his baton at him and "ordered" him not to move.  Defendant does not alleged

21

that he tried to leave and was stopped.  Nothing in the report or the declaration indicates that

22

Defendant's encounter with FOS Cortez was anything but consensual.

23

Under the applicable Supreme Court and Ninth Circuit authority, Defendant was not seized.

24

Police questioning, by itself, is unlikely to result in a Fourth Amendment violation.  Delgado, 466 U.S.

25

26

[5/]Relying on Mendenhall, 446 U.S. at 556-57, this Court noted that stopping car occupants for questioning typically involves a greater degree of intrusiveness than questioning of pedestrians and thus

27

more readily impinges on the Fourth Amendment.  Id. at 1430.

28

[6/]Even if the agent's car had "more completely blocked" Kim's car, there would be no seizure, because Kim could have walked away.  Id. at 1431 n.2.

1   at 216.  The Fourth Amendment permits police officers to approach persons in public places to ask them

2   questions.  Bostick, 501 U.S. at 431.  Absent force or coercion, requesting information is not a seizure.

3   Kim, 25 F.3d at 1430.

4        Defendant was not stopped or detained, and no force or coercion was used in questioning him.

5   For these reasons, there was no "seizure" under the Fourth Amendment and no need for probable cause.[7/]

6            2.      Detention of Border Questioning Does Not Require a Miranda Warning

7        Second, detaining a person for routine border questioning is not custodial.  See United States v.

8   Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001).  Consistent

9   with Galindo-Gallegos, Defendant was detained and asked immigration questions.  Defendant's efforts

10  to distinguish Galindo-Gallegos are distinctions without a difference.  Defendant was apprehended less

11  than two miles from the busiest Port of Entry in the United States in an area frequently traveled by

12  undocumented aliens.  He was far from alone.  Additionally, Defendant's two traveling companions

13  were located a short distance and a time later.  As such, there is no Miranda violation.

14            3.      Reasonable Suspicion Existed to Detain Defendant and Establish His Identity

15       Third, even if he was in custody, an investigatory detention, a brief seizure by police based on

16  reasonable suspicion of criminal activity, is an exception to the probable cause requirement of the Fourth

17  Amendment.  See Terry v. Ohio, 392 U.S. 1, 26 (1968).

18       Here, after being seen moving north from the secondary fence, reasonable suspicion existed to

19  justify the stop.  FOS Cortez questioned Defendant as to his citizenship and his right to be in the

20  country.  Defendant responded that he was a not a United States citizen and was in the United States

21  illegally.  Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited

22  prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held

23  by the court to be legitimate" and admissible).  Following discovery of Defendant's illegal attempt to

24  enter the United States, Agents timely advised Defendant that he was under arrest.  Defendant was also

25  timely advised of his Miranda warnings, which he waived.  All statements prior to Defendant's arrest

26

27       [7/]Since there was no seizure or detention, it follows a fortiori that there was no custody requiring
    the Miranda advisement.  Similarly, 18 U.S.C. § 3501 does not apply unless there was an arrest (or
28  detention).  United States v. Poschwatta, 829 F.2d 1477, 1481-82 (9th Cir. 1987) (overruled on other
    grounds in Cheek v. United States, 498 U.S. 192 (1991)).  In any event, Defendant's statements were
    voluntary and there was no "police overreaching."  Colorado v. Connelly, 479 U.S. 157, 170 ( 1986).

1    are admissible; and this Court should deny the motion to suppress any statements made prior to arrest.

2        **C.    Routine Booking Information**

3        Finally, upon detaining Defendant, Officers and Agents asked Defendant routine booking

4    questions for the purpose of obtaining background biographical information for filling out a personal

5    history report and a booking slip.    The Supreme Court has held that routine booking questions

6    reasonably related to law enforcement record keeping concerns are not testimony and are therefore

7    outside the Fifth Amendment privilege that Miranda is designed to protect.  See Pennsylvania v. Muniz,

8    496 U.S. 582, 600-602 (1990).  "Routine gathering of background biographical data does not constitute

9    interrogation sufficient to trigger constitutional protections."  United States v. Perez, 776 F.2d 797, 799

10   (9th Cir. 1985).  Citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the Ninth Circuit has held that

11   pre-Miranda questions regarding "where and when" a defendant was born "are normal questions

12   'attendant to arrest and custody,' so Miranda is not implicated."  United States v. Arellano-Ochoa, 461

13   F.3d 1142, 1146 (9th Cir. 2006) (allowing the defendant's statements where he was charged with being

14   a non-immigrant alien in possession of a firearm).  Consistent with Muniz and Perez, the Ninth Circuit

15   has allowed police officers to testify in § 1326 prosecutions about a defendant's statements of alienage

16   taken during the booking process.  See United States v. Salgado, 292 F.3d 1169, 1174 (9th Cir. 2002).

17   Defendant's responses to the Officers and Agents' questions therefore should be admitted.

18                                    **IX**

19   **DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

20       Defendant's motion for leave to file further motions should be denied except to the extent that

21   such motions are based on new discovery.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

## X

2

### CONCLUSION

3

For the foregoing reasons, the United States asks that the Court deny Defendant's motions,

4

except where unopposed, limit further motions to those based on new law or facts.

5

DATED: June 3, 2008                          Respectfully submitted,

6

KAREN P. HEWITT
United States Attorney

7

*s/Christopher M. Alexander*

8

CHRISTOPHER M. ALEXANADER

9

Assistant United States Attorney
Attorneys for Plaintiff

10

United States of America
Email: Christopher.M.Alexander@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.   08CR1003-WQH |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| LUIS MANUEL GOMEZ-DOMINGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' Response to Defendant's Motions to (1) compel discovery/preserve evidence, (2) suppress statements, and (3) various grounds to dismiss the Indictment, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1.    Erick Guzman, Esq.
                Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 3, 2008.

                                *s/Christopher M. Alexander*
                                CHRISTOPHER M. ALEXANDER