# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br>LUIS GOMEZ-DOMINGUEZ<br>　　　　　　　　　　　Defendant. | CASE NO. 08cr1003WQH<br><br>ORDER |

HAYES, Judge:

　　　The matter before the Court is Defendant's Motion to Suppress Statement (#13-5).

## FACTUAL BACKGROUND

　　　On Tuesday, March 4, 2008, at 9:05 a.m., United States Border Patrol Field Operations Supervisor Adan Cortez was performing his duties west of the Otay Mesa Port of Entry. Supervisor Cortez has performed border patrol duties at the Imperial Beach Station for over nineteen years with responsibility from the Pacific Ocean to the Otay Mesa Port of Entry. Another border patrol agent alerted Supervisor Cortez via service radio that the agent had observed three individuals going north from the secondary fence in the channel located 1.5 miles west of the port of entry. Supervisor Cortez responded to this location about seventy five yards north of the international border in an area known by the Supervisor Cortez to be used by undocumented aliens to illegally enter the United States. Supervisor Cortez described this area as a brushy, open area which is a short run north to a subdivision. The area can be viewed from the second story buildings to the north. Supervisor Cortez searched the area and found crawl signs going north into the grass. Supervisor Cortez apprehended three individuals,

1 including the Defendant, laying flat in the brush. Supervisor Cortez credibly testified at the
2 evidentiary hearing as follows:

> Cortez: Once I had them all secured, I had them all sit down and then I had them – I asked them once in Spanish if they were all Mexican citizens, and they all replied, yes.
> Attorney: Among those individuals was the Defendant?
> Cortez: Yes.
> Attorney: So the Defendant said that he was a Mexican citizen?
> Cortez: Yes.
> Attorney: Did you ask the Defendant his manner of entry into the United States?
> Cortez: Yes, I asked him in Spanish if they just jumped over, and they all indicated yes, they had just jumped over.

9 Transcript page 9. Defendant was detained and transported to the border patrol station.

10 Defendant testified at the evidentiary hearing that Supervisor Cortez was not the border
11 patrol agent who arrested him. Defendant testified that he ran away from the first agent and
12 that he was apprehended by a second agent who was not Supervisor Cortez. Defendant
13 testified that the second agent who apprehended him pointed a baton at him and that
14 Supervisor Cortez did not point a baton at him when he initially encountered him. Supervisor
15 Cortez testified that he did not have a baton on March 4, 2008 and that he does not carry a
16 baton.

17 Defendant was subsequently charged with knowingly and intentionally attempting to
18 enter the United States after having been previously excluded, deported and removed and not
19 having obtained permission to reenter in violation of 8 U.S.C. § 1326 (a) and (b).

**CONTENTIONS OF THE PARTIES**

21 The Government seeks to offer at trial the testimony of Supervisor Cortez that on March
22 4, 2008 the Defendant responded that he was a Mexican citizen and that he had just jumped
23 the fence. The Government contends that *Miranda* warnings were not required prior to this
24 routine questioning on the grounds that 1) the Defendant was not in custody when questioned;
25 2) detention for border questioning does not require *Miranda* warning; and 3) reasonable
26 suspicion existed to detain the Defendant and establish his identity.

27 Defendant contends that he was in custody when he was interrogated by Supervisor
28 Cortez and that *Miranda* warnings were necessary prior to any questioning. Defendant

1 contends that his freedom of action was restrained, that he did not feel free to leave, and that
2 he feared he would be hit with a baton if he did not comply. Defendant asserts that the agent
3 suspected him of being in the United States illegally and proceeded to ask him questions about
4 his citizenship and immigration status which were likely to elicit incriminating answers.

## ANALYSIS

6 The issue raised by the Defendant is the whether *Miranda* warnings were required
7 before Supervisor Cortez asked the Defendant any questions at the initial encounter in the
8 field. Warnings under *Miranda v. Arizona,* 384 U.S. 436 (1966) are required prior to
9 "custodial interrogation." *Id.* at 444. Whether a defendant was constitutionally entitled to a
10 *Miranda* warning is an issue of law and whether a person is "in custody" for the purposes of
11 *Miranda* is essentially a question of fact. *United States v. Galindo-Gallegos*, 244 F.3d 728,
12 730 (9th Cir. 2001).

13 In *Galindo-Gallegos*, "[t]wo border patrol agents were looking for aliens about 1800
14 feet north of the Mexican border. They saw a large group of people running, assumed they
15 were illegal aliens because of the location and that fact that they were running, and stopped
16 them. One of the agents told the people to sit down on the ground. The other agent chased
17 those who ran away. Among those he caught was ... Galindo-Gallegos. Once they had the 15
18 to 20 people seated, an agent asked them what country they were from and whether they had
19 a legal right to be in the U.S. Galindo-Gallegos said he was from Mexico and had no such
20 right." *Id.* at 729. The trial judge found the officers "in no way coerced these people to talk"
21 in the field, and found that "these are questions that need to be routinely asked of individuals
22 who are caught near the border." *Id.* at 730. The Court of Appeals concluded that under the
23 facts of the case, the individuals were not "in custody" for the purposes of *Miranda* and the
24 motion to suppress was properly denied. The Court of Appeals explained "[w]here officers
25 apprehend a substantial number of suspects and question them in the open prior to arrest, this
26 is ordinarily a *Terry* [*v. Ohio,* 392 U.S. 1 (1968)] stop, not custodial questioning." *Id.* at 732.

27 A *Terry* stop is a brief investigatory stop which is an exception to the probable cause
28 requirement of the Fourth Amendment. "The Fourth Amendment does not proscribe all

1 contact between the police and citizens, but is designed to prevent arbitrary and oppressive
2 interference by enforcement officials with the privacy and personal security of individuals."
3 *INS v. Delgado,* 466 U.S. 210, 215 (1984). "Beginning with *Terry v. Ohio,*[], the Court has
4 recognized that a law enforcement officer's reasonable suspicion that a person may be
5 involved in criminal activity permits the officer to stop the person for a brief time and take
6 additional steps to investigate further. (citation omitted.) To ensure that the resulting seizure
7 is constitutionally reasonable, a *Terry* stop must be limited. The officer's actions must be
8 justified at its inception, and ... reasonably related in scope to the circumstances which justified
9 the interference in the first place." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185
10 (2004).

11 *Miranda* warnings are necessary even during a *Terry* stop if the suspect has been taken
12 into custody or if the questioning takes place in a police dominated or compelling atmosphere.
13 However, *Terry* stops, though inherently somewhat coercive, do not usually involve the type
14 of police dominated or compelling atmosphere which necessitates *Miranda* warnings. *U.S. v.*
15 *Bautista*, 684 F.2d 1289, 1291 (9th Cir. 1982) (handcuffing a suspect does not automatically
16 turn a lawful investigative stop into a de facto arrest). "A brief but complete restriction of
17 liberty, if not excessive under the circumstances, is permissible during a Terry stop and does
18 not necessarily convert the stop into an arrest." *Id*. at 1289; *See also, United States v. Parr*,
19 843 F.2d 1228, 1230 (9th Cir. 1988) (there is no per se rule that detention in a police car
20 constitutes an arrest).

21 This Court concludes that the information and observations of Supervisor Cortez lead
22 him to reasonably suspect that the Defendant was involved in criminal activity. Supervisor
23 Cortez received a report of three individuals going north from the border fence in an area
24 known to him to be used by undocumented individuals to illegally enter the United States.
25 Supervisor Cortez found crawl marks heading north and located three individuals laying in the
26 brush seventy five yards north of the border fence. Supervisor Cortez was justified in briefly
27 detaining these individuals to investigate further. When he encountered each of the three
28 individuals, Supervisor Cortez identified himself as border patrol and directed each of the

1 individuals not to move.[1]  Once Supervisor Cortez had all three individuals in the same
2 location, he had them all sit down and asked them in Spanish one time whether they were all
3 Mexican citizens and if they had just jumped the fence.  All three individuals, including the
4 Defendant, voluntarily answered the brief and limited questioning.  The brief stop and limited
5 questioning about the Defendant's citizenship and his method of entry into the United States
6 was justified at its inception, and reasonably related in scope to the circumstances which
7 justified the interference in the first place.  There is no evidence in this case of oppressive
8 police conduct, custodial arrest, or police dominated atmosphere.  Under the facts of this case,
9 this Court concludes that the brief stop and limited questioning was not custodial interrogation
10 which required *Miranda* warnings.  *See, United States v. Brignoni-Ponce,* 422 U.S. 873, 881
11 (1975) ("... we hold that when an officer's observations lead him reasonably to suspect a
12 particular vehicle may contain aliens who are illegally in the country, he may stop the car
13 briefly and investigate the circumstances that provoke suspicion.").

14   It is hereby ordered that  Defendant's Motion to Suppress Statement (#13-5) is denied.
15 DATED:  June 24, 2008

                                  **WILLIAM Q. HAYES**
                                  United States District Judge

---

[1] There is no evidence that Supervisor Cortez carried a baton or threatened the Defendant with a baton.  Defendant's subsequent escape and apprehension by a second agent has no bearing on the admissibility of his statements to Supervisor Cortez.

- 5 -