**ERICK L. GUZMAN**
California Bar No. 244391
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
erick_guzman@fd.org

Attorneys for Mr. Gomez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE M. WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **LUIS GOMEZ-DOMINGUEZ**, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 08CR01003-WQH <br><br> DATE: July 21, 2008 <br> TIME: 2:00 p.m. <br><br> STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE* |

**I.**

**BACKGROUND**

Mr. Gomez incorporates, by reference, the statement of facts from his previously filed motions.

**II.**

**THIS COURT SHOULD PROHIBIT ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b) AND 609 BECAUSE THE GOVERNMENT HAS FAILED TO PROVIDE ADEQUATE NOTICE OF OTHER CRIMES, WRONGS, OR ACTS**

**A.    Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Federal Rules of Evidence 404(b). Notice is a condition precedent to admission of other acts evidence. Fed. R. Evid 404(b), 1991 Advisory Committee Notes. Timely notice of such evidence is also critical so that Mr. Gomez may adequately prepare his defense. Mr. Gomez has not received any notice of 404(b) evidence. Because the

1  government has failed to provide adequate notice of other crimes, wrongs, or acts allegedly committed by
2  Mr. Gomez, this Court should exclude any evidence the government will seek to introduce under Rule
3  404(b).

4  The government carries the burden of showing how any other acts evidence is relevant to one or
5  more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of
6  consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822,
7  830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979))
8  (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the
9  government has failed to provide notice of 404(b) evidence, let alone articulate the precise evidential
10 hypothesis by which this evidence will be admitted, this evidence must be excluded under Federal Rules of
11 Evidence 401, 404(b) and 403.

12 **B.     Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

13 Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior
14 conviction to only those offenses for which the court determines that the probative value outweighs its
15 prejudicial effect to the accused.  The government should be precluded from introducing any evidence of
16 Mr. Gomez's prior convictions, as they are irrelevant under Federal Rule of Evidence 401, prejudicial under
17 Federal Rule of Evidence 403. See Fed. R. Evid. 609(b). If Mr. Gomez were to testify at trial, the danger
18 of unfair prejudice would substantially outweigh any possible relevance of his prior offense. Fed. R. Ev.
19 401, 403, 609.  This danger is present to an unusual degree in this case, because the title of the statute
20 covering Mr. Gomez's alleged Arkansa's conviction sounds terrible and evokes the worst images and
21 strongest emotions.[1]

22 To the extent that this Court rules that Mr. Gomez's prior convictions are admissible under Federal
23 Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from
24 referring to, the offense and specific facts of any crime for which Mr. Gomez was convicted.  Such
25 information would be more prejudicial than probative of Mr. Gomez's guilt of the charged offense.

26
27
---
28 [1]     The actual conduct that allegedly occurred is much more benign.  Mr. Gomez has covered those facts at length in his discover motion filed June 17, 2008.

# III.

## THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION DOCUMENTS AT TRIAL

**A.    The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation, *Not* Alienage**

Mr. Gomez expects that the government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his deportation. These two documents are admissible *only* to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Gomez' alleged alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Gomez to be an alien after an administrative hearing, and that Mr. Gomez may have been removed from the United States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of Evidence 401 to establish the fact of alienage.[2]

---

[2]    In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in

1  Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of
2  Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because
3  their probative value is substantially outweighed by their prejudicial effect. Both the order of deportation
4  and warrant of deportation make reference to an "alien;" even more troubling, in the context of these
5  documents, the term "alien" is associated *with* Mr. Gomez, who presumably is the "alien" to which the
6  documents refer. In the face of these quasi-official government documents proclaiming Mr. Garcia to be
7  an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as
8  an open question that the government must prove beyond a reasonable doubt.

9  Should the Court nonetheless admit these documents, Mr. Gomez requests that this Court instruct
10 the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of deportation and
11 the order of deportation to establish the fact of the deportation and for no other purpose, and that these
12 documents do not, in and of themselves, establish the fact of alienage. Mr. Gomez further requests that this
13 Court redact these documents to exclude any reference to his alleged alienage.

14 **B.    None of the Other A-File Documents Are Admissible Under Any Rule of Evidence.**

15 Mr. Gomez anticipates that the government may seek to admit other documents from the A-file,
16 including the order to show cause why a person should not be deported and warnings regarding the possible
17 penalties for reentry. None of these documents from the A-file are admissible to establish any matter at issue
18 in this trial. All documents from the A-file—except the warrant of deportation and the order of deportation
19 discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial than probative,
20 cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible hearsay under
21 Federal Rule of Evidence 803(8).

---

Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

1. <u>The Notice to Appear Is Inadmissible.</u>

The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The Notice to Appear is a document that provides an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides an objective observation that a person committed a crime. This document is nothing more than an *accusation* that the government must prove in an immigration proceeding.

2. <u>The Warnings of Possible Penalties Is Inadmissible.</u>

Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The warning of possible penalties contains boilerplate statements (drafted by the former INS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay, and is completely irrelevant. It is also more prejudicial than probative. Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry; needless to say, such speculation is completely irrelevant to the charge at hand and could be severely prejudicial. Accordingly, the warnings of possible penalties also must be excluded at trial.

3. <u>If this Court Finds That These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage; Thus, This Court Should Order the Documents Redacted and Provide the Jury With a Limiting Instruction</u>.

To the extent that this Court finds any A-file document relevant to some point, the document is not admissible to establish Mr. Gomez's alienage. Accordingly, this Court should redact these documents to exclude all references to alienage as well as any other prejudicial information such as prior convictions. Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C. This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Gomez's Constitutional Rights.**

Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage to protect Mr. Gomez's rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments. Because the right to confrontation

is not applicable in immigration proceedings, the government may have met its burden of proving alienage in such a proceeding based upon otherwise inadmissible hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988). Similarly, because a criminal defendant such as Mr. Garcia never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

Additionally, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation"). The government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential element.

In sum, because the A-file documents are generated by the government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety; or, to the extent the Court finds that these documents are admissible to

prove some other fact, it should redact these documents to exclude reference to Mr. Gomez's alienage and instruct the jury as to the documents' limited relevance.

### IV.

### THE COURT SHOULD ORDER PRODUCTION OF ANY "SUPPLEMENTAL REPORTS"

Mr. Gomez requests disclosure of any "supplemental reports" generated in this case. It has come to Mr. Gomez's attention that the Government's recent practice is to not disclose these "supplemental reports." These reports generally memorialize later investigation of the case, and can include information that confirms a defendant's statements made at the border. Mr. Gomez believes that such a report is discoverable under Brady and Rule 16. Additionally, pre-trial disclosure will avoid unnecessary delay at trial should the reports become producible under Jencks. See, e.g., Fed. R. Crim. P. 26.2(d). If the Government contends that any "supplemental report" generated in this case is not discoverable, Mr. Gomez requests that the Court view this report *in camera*.

### V.

### THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts, if a witness who likely will testify at the trial of Mr. Gomez is also likely to have testified before the grand jury. Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the Government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule of Criminal Procedure 26.2(d).

### VI.

### THIS COURT SHOULD COMPEL INSPECTION OF CERTIFIED DOCUMENTS PRE-TRIAL

While Mr. Gomez objects to the introduction of any A-File documents, it is clear that no public record can be introduced unless certified. While the defense has received photocopies of several documents in discovery, it has not received copies of any alleged certifications. Typically, these simply appear in the middle of trial. Defense counsel requests an opportunity to inspect any alleged certifications pre-trial, so that any issues can be dealt with in a timely and appropriate way.

## VII.

## **THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED *VOIR DIRE***

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Gomez's right to trial by an impartial jury, defense counsel requests the opportunity to personally *voir dire* the prospective members of the jury.

## VIII.

## **THIS COURT SHOULD SUPPRESS THE DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT.**

The Court must exclude any deportation hearing audiotape or transcript because they would contain un-Mirandized statements made by Mr. Gomez in response to custodial interrogation. Questions asked in a custodial setting constitute interrogation if, under all the circumstances, the questions are "reasonably likely to elicit an incriminating response from the suspect." United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1982)(citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). In Mathis v. United States, 391 U.S. 1 (1968), the Supreme Court held that the defendant's statements to a revenue agent who was conducting a routine tax investigation were the product of custodial interrogation within the meaning of Miranda despite the fact that the agent's questioning was part of the routine tax investigation where no criminal proceedings could have even been brought and the defendant was in jail on an entirely separate offense. Id. at 4. The Court stated that "[t]hese differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." Id.

In the immigration context, this Court has stated: "[i]f civil investigations by the INS were excluded from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983). In Mata-Abundiz, an INS investigator interviewed the defendant at a local jail, where he was being held on state charges, as part of a routine civil investigation without a prior Miranda advisement. In a subsequent federal prosecution for possession of a firearm by an alien, the district court permitted the government to introduce the defendant's statement to the INS investigator concerning his Mexican citizenship. This Court reversed

1  the defendant's conviction recognizing that "the investigator cannot control the constitutional question by placing a 'civil' label on the investigation." Id. at 1280.

Moreover, the Ninth Circuit in Mata-Abundiz rejected the government's argument that the questioning fell within the exception to the Miranda requirements for routine background questioning attendant to arrest and booking. See United States v. Booth, 669 F.2d at 1237-38. In Booth, the court of appeals stated: "Ordinarily, the routine gathering of background, biographical data will not constitute interrogation. Yet we recognize the potential for abuse by law enforcement officers who might, under the guise of seeking 'objective' or 'neutral' information, deliberately elicit an incriminating statement from a suspect." Booth, 669 F.2d at 1238. The Court applied this objective test to Mata-Abundiz and found that the "background questions" related directly to an element of the offense to which the defendant was suspected and the questions were likely to elicit an incriminating response. Mata-Abundiz, 717 F.2d at 1280.

Like the questioning in Mathis and Mata-Abundiz, the questioning by the immigration judge in this case was "reasonably likely to elicit an incriminating response" within the meaning of Booth. All of Mr. Garcia' statements were made in response to direct questioning by government officials. The questioning concerned Mr. Gomez' place of birth, citizenship, and manner of entry into the United States. Federal law provides for criminal penalties to aliens who illegally enter the United States, see 8 U.S.C. § 1325, and to aliens who illegally reenter the United States following deportation, see 8 U.S.C. § 1326.

In United States v. Solano-Godines, 120 F.3d 957, 961 (9th Cir. 1997), the government brought criminal charges against the defendant, Mr. Gomez for illegal reentry after a deportation. Id. at 959. Two years before, Mr. Solano appeared at a civil deportation hearing at which he made statements about his place of birth and citizenship. Id. Mr. Solna was not given Miranda warnings prior to making these statements. Id. Prior to trial, Mr. Solona filed a motion to suppress the statements at his deportation hearing. Id. at 960. The district court denied the motion and Mr. Solano entered a conditional plea agreement. Id. On appeal, the Ninth Circuit held that Miranda warnings were not required in that case because the immigration judge "could not be expected to anticipate that two years later Mr. Solona would illegally reenter the United States and that his responses to questions at his civil deportation hearing might incriminate him in a prosecution for this future crime." Id. at 962.

The Ninth Circuit's holding and reasoning in <u>Solano-Godines</u> is inapplicable to this case. In particular, the Notice to Appear charged Mr. Gomez with entering without inspection. Therefore, Mr. Garcia's responses to the immigration judge's questioning should be excluded because his responses could have subjected him to criminal prosecution at that time, not some unknown time in the future. For that reason, the immigration judge should have advised him of his rights under <u>Miranda</u>. Because Mr. Garcia's admission were made without the benefit of <u>Miranda</u> warnings his statements at the deportation hearing must be excluded. <u>See</u> <u>United States v. Alderete-Deras</u>, 743 F.2d 645, 648 (9th Cir. 1984) (noting that the lack of <u>Miranda</u> warnings at a civil deportation hearing might render statements made at the hearing inadmissible in a subsequent criminal trial).

## IX.

## **THE COURT SHOULD ADMIT MR. GARCIA'S ENTIRE STATEMENTS UNDER THE RULE OF COMPLETENESS**

According to the Government, Mr. Gomez allegedly waived his *Miranda* rights and made a post-arrest statement. The Government may seek to introduce parts of this statement as admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2). If the Government does introduce certain portions of Mr. Garcia's statement, Mr. Gomez should be permitted to introduce the statement in its entirety. Fundamental fairness dictates that the Government should not be permitted to introduce only the parts of the defendant's statement that help the Government. In other words, the jury should not be left with the impression that they have heard the defendant's entire statement, when they have not. *See* Fed. R. Evid. 106 (codifying common law "rule of completeness").

## X.

## **THIS COURT SHOULD PRECLUDE EXPERT TESTIMONY**

**A.    All Expert Witnesses Offered Without Requisite Notice to Defendant Violate Federal Rule of Criminal Procedure 16(a)(1)(E) and must Be Excluded.**[3]

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to

---

[3]    Mr. Gomez recognizes that the government has noticed the defense of their intention to call Ms. Lisa Dimieo.

use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is *entitled* to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided.). Mr. Garcia previously filed a Motion to Compel Discovery/Preserve Evidence, which requested that the government disclose its expert witnesses per Rule 16. Thus far, the government has not given any notice regarding expert testimony. Mr. Gomez respectfully requests that this Court grant this motion *in limine* to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

**B.     To the Extent this Court Permits the Government to Introduce Expert Testimony, a *Daubert* Hearing is Required.**

If this Court determines that the government may introduce expert testimony, Mr. Gomez is entitled to a hearing to determine the expert's qualifications and the relevancy of the expert's proposed testimony. See Fed R. Ev. 702, Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Mr. Gomez specifically requests such a hearing should the government introduce testimony regarding fingerprint analysis—for example, testimony regarding the relationship between fingerprints taken from Mr. Gomez and those allegedly found on documents in Mr. Garcia's A-file.

"Faced with a proffer of expert scientific testimony, . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue . . . ." Id. at 592-93. Mr. Gomez requests that the Court make this determination after a pre-trial hearing held outside the presence of the jury, during which Mr. Gomez can test the proffered testimony's foundation and relevance.

## XI.

## THIS COURT SHOULD PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT IMMIGRATION PROCEEDINGS

Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to confront witnesses. Additionally, evidence must be relevant and not create confusion, or be prejudicial. Fed. R. Ev. 401, 403. Finally, no lay witness is permitted to offer an opinion or testify about specialized knowledge. Fed. R. Ev. 702; United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

In this case, defense counsel expects that the Government will call the "A-File custodian" to establish the foundation for the admission of selected documents from Mr. Gomez's A-File. It is also expected that the Government will ask the "A-File custodian" how immigration proceedings work and what occurs when an individual is physically deported. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, and its admission would violate Mr. Gomez's rights to a fair trial and to confront witnesses under the Fifth and Sixth Amendments. For example, it is unlikely that the "A-File custodian" has participated in deportation proceedings as either an immigration judge, an immigration attorney, a deportation enforcement officer, or a deportee; thus, he or she would not be testifying from his or her own personal knowledge, but rather from the hearsay statements of other people who were not presented by the Government for cross-examination by Mr. Gomez. Accordingly, this Court should preclude the "A-File custodian" from testifying about how immigration proceedings work and about the significance of documents related to those proceedings. Rather, assuming the Court finds the A-File documents admissible despite Mr. Gomez's arguments to the contrary, this Court should limit the "A-File custodian's" testimony to laying a foundation for the admission of the A-File documents—and only then to the extent that the "A-File custodian" has the personal knowledge necessary to lay that foundation.

## XII.

## THIS COURT SHOULD PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT SEARCHING DATABASES FOR PERMISSION TO REENTER

Recently, the Government has taken to streamlining its 8 U.S.C. § 1326 trials by having the "A-File custodian" testify regarding a defendant's lack of permission to reapply for admission to the United States. Typically, this consists of the agent's explaining that he or she searched two databases and the A-File for a so-called "I-212" form by which an alien can apply for permission to reapply for admission to the United States, and found none. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, 1002, and its admission would violate Mr. Gomez's rights to a fair trial and to confront witnesses under the Fifth and Sixth Amendments.

The best evidence rule provides that the **original** of a "writing, recording, or photograph" is required to prove the contents thereof. Fed. R. Evid. 1002. A writing or recording includes a "mechanical or electronic recording" or "other form of data compilation." Fed. R. Evid. 1001(1).

> An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it . . .. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original."

Fed. R. Evid. 1001(3).

In United States v. Bennett, 363 F.3d 947 (9th Cir. 2004), a case out of this district, the defendant was charged with importation of marijuana and importation with intent to distribute. The agent testified that the boat, which was found in United States' waters, had traveled into the United States from Mexico, based on data the agent saw on the ship's global positioning system. The Court found that the best evidence rule applies in cases, like this one, "when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe." Id. at 953 (citing Fed. R. Evid. 1002 Advisory Committee's note). The Ninth Circuit held that, based on the best evidence rule, the district court committed reversible error by allowing the introduction of this testimony. Id. at 956.

Here, it is anticipated that the Government will seek to establish that an I-212 form was not submitted, based on an agent's alleged review of data contained on a Government database. Under Rule

1002, however, the best evidence is the database itself, or a report generated from the database, not an agent's testimony. Therefore, the introduction of this testimony is violative of the Rule 1002.

Moreover, as explained previously, under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to confront witnesses. Additionally, evidence must be relevant and not create confusion or be prejudicial. Fed. R. Ev. 401, 403. Finally, no lay witness is permitted to offer an opinion or testify about specialized knowledge. Fed. R. Ev. 702; United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

The "A-File custodian's" testimony regarding database searches violates these rights on several levels. For example, it is unlikely that the "A-File custodian" has himself or herself input the information he or she allegedly searches for into the databases that he or she testifies about; rather, he or she is testifying about what other persons have input (or failed to input). Accordingly, the "A-File custodian" has no personal knowledge whatsoever regarding why information regarding Mr. Gomez does or does not appear in these systems, but is instead testifying from the hearsay statements of other people who were not presented by the Government for cross-examination by Mr. Gomez.

Equally troubling, the "A-File custodian" is not a database or immigration expert, and it is expected that the Government will not qualify the "A-File custodian" as an expert in this regard. Nor will the Government provide the defense with expert notice as required by Federal Rule of Evidence 702. Yet, it is clear that searching complex Government databases for specialized information reflecting legally-complex immigration procedures requires specialized knowledge far outside the ken of a lay witness. Finally, the "A-File custodian's" testimony regarding database searches yielding no evidence of permission to reapply for admission can only serve to confuse the jury and prejudice Mr. Gomez. By allowing the "A-File custodian" to testify in a conclusory manner regarding searches she is not qualified to perform, this Court virtually ensures that the jury will give the "A-File custodian's" testimony far more weight than it is due.

### XIII.

### THE COURT SHOULD ALLOW EACH JUROR TO HAVE A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

Juries consist of lay people, who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the Government's burden of proving a case beyond a reasonable doubt, and the defendant's constitutional right not to testify and present evidence in his own defense.

In this case, there are numerous elements the Government must prove to convict Mr. Gomez. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the Government has proven <u>each</u> element beyond a reasonable doubt.[4]

### XIV.

### THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

Neither the Federal Rules of Criminal Procedure, nor case law requires sending a copy of the indictment to the jury room, because the indictment is not evidence. As the commentary to Model Instruction 3.2 ("Charge Against Defendant Not Evidence") indicates, special care must be taken if the indictment is sent into the jury room during deliberations. Thus, the better practice is not to send the indictment into the jury room.

Mr. Gomez urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes to speculate that *another* jury—the grand jury—already made the relevant determinations in this case. Similarly, the indictment recites that "the grand jury charges," and this

---

[4] Mr. Gomez is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies, as well.

could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Gomez guilty. Mr. Gomez also requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-52 (9th Cir. 1989).

## XV.

## THE GOVERNMENT MUST BE PRECLUDED FROM INTRODUCING EVIDENCE OF A REINSTATEMENT OF DEPORTATION

The Ninth Circuit, sitting en banc, recently decided Morales-Izquierdo v. Gonzales, 486 F.3d 484 (9th Cir. 2007) (en banc). Morales-Izquierdo reasoned "that reinstatement and removal are placed in different sections, which logically can be understood as indicating a congressional intention to treat reinstatement determinations differently from first-instance determinations of removability." See Morales-Izquierdo, 486 F.3d at 490. (quotation marks omitted). Because "Congress placed reinstatement in a separate section from removal suggests that reinstatement is a separate procedure, not a species of removal." Id. The en banc panel concluded that "Congress intended reinstatement to be a different and far more summary procedure than removal." Id. at 491; see also United States v. Luna-Madellaga, 315 F.3d 1224, 1231 (9th Cir. 2003)(Thomas, J., dissenting) (stating that the "reinstatement process neither issues an order of removal nor considers new evidence that occurred after the date of the original order."). Put simply, Morales-Izquierdo held "Congress did not consider removal and reinstatement to be equivalent." Id. In fact, Morales-Izquierdo specifically rejected the notion that a reinstatement can result in new criminal penalties: "[t]he reinstatement order imposes no civil or criminal penalties." 486 F.3d at 498. See also Luna-Madellaga, 315 F.3d at 1231-32 (Thomas, J., dissenting) (explaining why a contrary result would be constitutionally doubtful). Therefore, the government should not be permitted to admit evidence of any reinstatements.

## XVI.

## THIS COURT SHOULD GRANT MR. GOMEZ LEAVE TO FILE FURTHER MOTIONS

Mr. Gomez requests leave to file further motions as may be necessary. Specifically, Mr. Gomez the tape of the purported deportation

## XVII.

## CONCLUSION

For the foregoing reasons, and for such other reasons as may appear at the hearing on these motions, Mr. Gomez respectfully requests that the Court grant his motions, and accord such other relief as this Court deems just.

Respectfully submitted,

DATED: July 7, 2008

*/s/ Erick L. Guzman*
**ERICK L. GUZMAN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Gomez
E-Mail: Erick_Guzman@fd.org