**ERICK L. GUZMAN**
California Bar # 244391
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467
Fax: (619) 687-2666
E-Mail: erick_guzman@fd.org

Attorneys for Luis Gomez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>LUIS GOMEZ,<br><br>  Defendant. | Case No. 08CR1003-WQH<br><br>DATE: August 4, 2008<br>TIME: 2:00 P.M.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |

**I.**

**INTRODUCTION**

On April 9, 2007, Mr. Gomez was brought before Immigration Judge for a removal hearing. The relevant Notice to Appear charged Mr. Gomez with being removal pursuant to sections 212(a)(6)(A)(I) [alien present without admission or parole] and 212(a)(2)(i)(I) [having committed a crime of moral turpitude or a controlled substance offense] of the immigration and Nationality Act. See Notice to Appear (attached as Exhibit A). He appeared unrepresented by counsel. See Tx. of Deportation Hearing at 1 (Attached as Exhibit B). At the hearing, the IJ stated:

> As such, you are entitled to delaying your case, if you wish, either to better prepare your case, or to acquire an attorney, or you may go forward today, whichever you desire.

See id.

The only other mention of counsel the IJ makes was as follows:

> Sir, Do you understand that you have the right to have an attorney, but that the government would not pay for it.

See id. at 2.

IJ never again mentions Mr. Gomez's right to counsel or explains the benefit of securing counsel. See Exhibit B.

During the hearing, the IJ inquired into any family Mr. Gomez may have that resided in the United States, and Mr. Gomez responded that his Uncle lived in this country. See id. at 5. The IJ did not make any inquiries about this uncle; i.e. the immigration status of this uncle. See id. Moments later, the IJ inquires of the government if they are aware of any relief available to Mr. Gomez. The government replies negatively. See id. The IJ then orders Mr. Gomez removed.

## II.

## DISMISS THE INDICTMENT

**A.   This Court Should Dismiss the Indictment Due to an Invalid Deportation.**

To successfully collaterally attack his deportation, Mr. Gomez must demonstrate that: 1) he exhausted all administrative remedies available to him to appeal his removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and, 3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); Ubaldo-Figueroa, 364 F.3d at 1048. "An underlying removal order is 'fundamentally unfair' if: '1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (citing Zarate-Martinez, 113 F.3d at 1197) (brackets omitted).

Importantly, although Gomez carries the initial burden on the issue of prejudice, once he makes a prima facie showing of prejudice, **the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome**. United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added).

As explained below, Mr. Gomez can demonstrate each of the elements necessary for this Court to sustain his collateral attack.

2

**B.     Mr. Gomez is Exempt from the Exhaustion Requirement, Because He Was Not Informed of His Eligibility for Relief**

A waiver of the right to appeal a removal order does not comport with due process when it is not "considered and intelligent." United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003). See also United States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir. 2004) (For a waiver to be valid, the government must establish by "clear and convincing evidence" that the waiver is "considered and intelligent."); United States v. Leon-Paz, 340 F.3d 1003, 1005 (9th Cir. 2003); United States v. Gonzalez-Mendoza, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding a due process violation where immigration judge failed to inquire whether right to appeal was knowingly and voluntarily waived). In this case, because Mr. Gomez's waiver was based on inadequate and inaccurate advice regarding his rights, the government cannot establish by clear and convincing evidence that the appellate waiver was "considered and intelligent."

Due process requires the Immigration Judge assure that respondents in immigration court are "properly" advised of their eligibility for relief and that their decision to waive appeal is a "considered judgment." United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987). This means that when a respondent appears pro se, the Immigration Judge must conduct a sufficient inquiry into the respondent's personal circumstances to develop the record and inform the alien of any potential relief. See 8 C.F.R. § 1240.11(a)(2) (2006) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing."). See also Agyeman v. INS, 296 F.3d 871, 884 (9th Cir. 2002) (stating that "the IJ has a duty to fully develop the record when an alien proceeds pro se"). The IJ therefore "must scrupulously and conscientiously probe into, enquire of, and explore for all relevant facts." United States v. Jacinto, 208 F.3d 725, 733 (9th Cir., 2002) (internal citations omitted); Colmenar v. I.N.S., 210 F.3d 967 (9th Cir. 2000) (Right to a "full and fair" violated when IJ failed to elicit relevant testimony from alien). See also Arce-Martinez-Valdez, 163 F.3d at 563 ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.").

The Immigration Judge Benchbook implements these regulatory and constitutional requirements by requiring the Immigration Judge to treat pro se respondents differently. See U.S. Dep't. of Justice, Exec. Office of Imm. Rev., Immigration Judge Benchbook at 110 (2001) ("IJ Benchbook"). In particular, "[t]he

3

1  Immigration Judge has a responsibility to advise the respondent of any relief to which he may be entitled to
2  apply." Id. Moreover, "In all pro se matters, the [IJ] must be careful and solicitous of the respondent [so as
3  to be] certain to have advised the respondent of all of his rights and obligations and the consequences of his
4  obligations." When addressing pro se respondents, the IJ must ensure that "all of the respondent's questions
5  will be answered." Id. at 110. As a result of this "solicitous" inquiry, the Benchbook notes, "in the case of
6  an unrepresented respondent, the Immigration Judge will have to take a more active role in the development
7  of the hearing." Id. at 110.

8        The Immigration Judge in this case failed to engage in even the most cursory inquiry of Mr. Gomez's
9  circumstances, and consequently failed to advise him of relief for which he was plainly eligible. The IJ also
10 failed to follow up on the little information the Mr. Gomez was permitted to offer e.g. the immigration status
11 of his uncle, or the conditions under which Mr. Gomez arrived to the United States. The minimal inquiry of
12 pro se respondents that due process requires would have revealed Mr. Gomez's eligibility for relief.

13       A review of other immigration proceedings reveals the inadequacy of the Immigration Judge's inquiry
14 in this case. Counsel has attached two typical transcripts from other cases to this motion. See Exhibits C-D[1].
15 While each proceeding suffers its own deficits, the transcripts demonstrate the correct procedure with respect
16 to pro se applicants. Compare Exhibit C at 9 (inquiring about "legal family members in the United States"
17 and advising respondent of potential relief.); Exhibit D at 5 (same).

18       As stated above, the IJ performs no search for possible relief, rather, he merely asks the attorney for
19 the government if they are aware of any relief available for Mr. Gomez. See Exhibit B at 5.

20       Yet, even without a thorough inquiry, similar to that performed by the IJ's in the attached transcripts,
21 this IJ should have known relief was available. Apparently, the IJ did not, and as a result, he failed to inform
22 Mr. Gomez that he was eligible for voluntary departure relief, INA §212(a)(6)(A)(ii) relief.

23       Voluntary departure is available to all aliens save for two classes:1) those convicted an aggravated
24 felony; or 2) those that have committed an espionage or terrorism related offense. See 8 USC 1229(c). Mr.
25 Gomez has never suffered such a conviction, which will be discussed below.

26       Furthermore, the IJ failed to advise Mr. Gomez that he possibly had relief available in so far as he

---

[1] Defense counsel selected these two transcripts from recent cases. Should the Court desire, counsel offers to provide additional similar examples.

4

1  was excepted from the provision under which he was removed, INA §212(a)(6(A)(i)[2]. This sections renders
2  removable aliens who have not properly been admitted; however, the following subsections contains an
3  exception for "battered women and children." INA §121(a)(6)(A)(ii). The IJ had a duty to inquire into Mr.
4  Gomez's situation and explore possible relief. See Mendoza-Lopez, 481 U.S. at 840; see also Arce-Martinez,
5  163 F.3d at 563; see also IJ Benchbook at 110. The IJ knew that Mr. Gomez was only nineteen. See Exhibit
6  B at 5. And the IJ knew that Mr. Gomez arrived in 2004, when Mr. Gomez was only sixteen. See id. at 3.
7  The IJ had a duty to inquire into the circumstances under which Mr. Gomez was sent here and determine if
8  he excepted by INA §121(a)(6)(A)(ii).

These errors of law excuse Mr. Gomez's waiver of his right to appeal. See United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 n.2 (9th Cir. 2004) (A person eligible for relief from removal who is mis-advised by an IJ that he is not eligible for relief is "exempted from the exhaustion requirement" of § 1326(d)).

**C.      Mr. Gomez Was Deprived of Judicial Review.**

To sustain a collateral attack on his removal order, Mr. Gomez also must demonstrate that the deportation proceedings improperly deprived him of judicial review. 8 U.S.C. § 1326(d)(2). As explained above, Mr. Gomez was deprived of the opportunity for judicial review because the IJ abdicated his responsibility to develop the record and relied on the government's estimate on the availability of relief, and failed to inform Mr. Gomez of his eligibility for voluntary departure. Compare Mendoza-Lopez, 471 U.S. at 840 (failure to fully explain potential relief amounted to "complete deprivation of judicial review"); Ubaldo-Figueroa, 364 F.3d at 1049-50 (failure to inform an immigrant of possible eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding).

**D.      Mr. Gomez's Deportation Proceeding Was Fundamentally Unfair and Prejudicial.**

Finally, Mr. Gomez must show that the proceedings were fundamentally unfair. "An underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding; and (2) he suffered prejudice as a result of the defects.'" Ubaldo-

---

[2]      Obviously, this would be moot if Mr. Gomez was properly removable under INA §212(a)(2)(A)(i)(I); he was not. Mr. Gomez has not been convicted of a crime of moral turpitude.

Figueroa, 364 F.3d at 1048 (quoting Zarate-Martinez, 133 F.3d at 1197). To establish prejudice, Mr. Gomez does not have to show that he would have been granted relief. Instead, he need only show that he had a "'plausible' ground for relief from deportation." Id. at 1050 (citing Arrieta, 224 F.3d at 1079). Furthermore, as noted previously, although Mr. Gomez carries the initial burden on the issue of prejudice, once he makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome. Gonzalez-Valerio, 342 F.3d at 1054. Mr. Gomez was specifically prejudiced by: 1) the IJ's failure to advise him of his eligibility for voluntary departure; 2) the IJ's failure to advise him of his potential eligibility for INA §212(a)(6)(A)(ii) relief; and 3) his invalid waiver of his Constitutional right to counsel.

### 1. Mr. Gomez Was Prejudiced By the IJ's Failure to Inform Him of His Eligibility for Voluntary Departure

#### a. The Arkansas Statute Is Not a Categorical Aggravated Felony, And Therefore Mr. Gomez Was Eligible for Voluntary Departure

Mr. Gomez was eligible for voluntary departure if was not convicted of a aggravated felony. See U.S.C. 1229(c). 8 U.S.C. §1101(a)(43) defines aggravated felonies, including "sexual abuse of a minor." See 8 U.S.C. §1101(a)(43)(A). Thus, the inquiry becomes, does Arkansas' "sexual indecency with a child" qualify as sexual abuse of a minor. See Ark. Code Ann. §5-14-110. It does not for at least three reasons: 1) the statue applies to minors that are older than sixteen; 2) it applies to consensual sex between (between an eighteen year old and a minor almost eighteen); 3 it covers solicitation.

In order for Arkansas statute 5-14-110 to qualify categorically as "sexual abuse of a minor," and therefore an aggravated felony, the "full range of conduct" covered by that statute must fall within the meaning of sexual abuse of a minor. See United States v. Lopez-Solis, 447 F.3d 1201, 1206 (9th Cir. 2006). Under the "categorical" approach, Courts "look solely to the statutory definition of the crime, not to the underlying circumstances of the predicate conviction." Id. citing United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999). In order for section 5-14-110 to qualify, "even the least egregious conduct the statute covers must qualify of a sexual abuse of a minor." Lopez-Solis, 447 F.3d at 1206, citing United States v. Valencia, 439 F.3d. 1046, 1052 & n.3 (9th Cir. 2006).

      b.      Statutory Rape Statutes Applying to Seventeen Year Old Minors Do Not Categorically Qualify as Sexual Abuse of a Minor

Several sections of the statute apply to minors that are older than sixteen. Section (a)(1) can apply to minors older than 16, as long as "they are "represented to be less than fifteen (15)." See Ark. Code Ann. §5-14-110(a)(1). Section (a)(4) applies to a seventeen individuals under age of eighteen.

Statutory Rape laws that prohibit consensual sex with victims older than fifteen, but younger than eighteen, are not categorically qualify as sexual abuse of minor. See Lopez-Solis, 447 F.3d at 1208-1209 (Tennessee's mitigated statutory rape is not categorically sexual abuse of a minor). In Lopez-Solis the Ninth Circuit recognized that as the minors approached majority, the chance of negative impact decreased. Id.("as the victim's age increases, the concerns [of psychological damage] decrease."). As this Court must consider the least egregious conduct covered by Section 5-14-110, it must consider whether sexual intercourse with a seventeen year old is "sexual abuse with a minor;" and the case law dictates that it is not.

United States v. Rodriguez-Guzman, 506 F.3d 738, 745 (9th Cir. 2007) held that California's Statutory Rape law was a deviation from both Federal Law[3] and the majority of the states, because it defines minor as anyone under eighteen, whereas the norm is someone older than twelve and younger than sixteen. See Cal. Penal Code §261.5 (2006); contrast Model Penal Code §213.3(1)(a) (2001) (defining a "minor" as the ages between twelve and sixteen).

      c.      Crimes that Proscribe Solicitation, Like Section 5-14-110, Are Not Categorically Sexual Abuse of a Minor

Section 5-14-110(a)(1) covers solicitation of sexual contact. Pallares-Galan, 359 F.3d at 1101 held that while such solicitation could be annoying, it is not "maltreatment" so egregious to constitute sexual abuse. See Links v. Arkansas, 1997 WL 286434 (Ark. App. 1997) (upholding a conviction where defendant only solicited sexual activity and no contact occurred).

      d.      There Are No Judicially Recognizable Documents to Establish the "Minor's Age"

No step-II analysis can be performed because there are no judicially recognizable documents to focus the Courts inquiry. See United States v. Shumate, 329 F.3d 1026, 1029 (2003), as amended by 341 F.3d 852 (9th Cir. 2003). The Judgment does not specify what subsection to which Mr. Gomez pled guilty. See Arkansas Judgment (attached as Exhibit E). Nor are there any judicially recognizable documents establish

---

[3] 18 U.S.C. §2243(a) (2006).

7

the minor's age. See Shepard v. United States, 544 U.S. 13,16 (2005).

### 2. Mr. Gomez Was Prejudiced By the IJ's Failure to Inform Him of His Potential INA §212(a)(6)(A)(ii) Relief

As mentioned above, the Mr. Gomez was being removed pursuant to INA §212(a)(6)(A)(i) [alien that has not been admitted or paroled]. This section has an exception for abused women and children. See INA §212(a)(6)(A)(ii). The IJ knew that Mr. Gomez entered at the age of sixteen. See Exhibit B at 3 & 5. The IJ has an affirmative duty to explore possible relief. This IJ's failure to carry out this duty, coupled with the IJ's failure to inform Mr. Gomez of this possible relief, constitute prejudice.

### 3. Mr. Gomez was Prejudiced by His Invalid Waiver of Counsel

IJ's are required to ensure that any waiver of counsel is knowing and voluntary. See Biwot v. Gonzalez, 403 f.3d 1094, 1100 (9th Cir. 2005) see also Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004). IJ's are not held to a "Herculean" standard, however, they must advise petitioners of the implications of proceeding without an attorney. See Ram, 529 f.3d 1238, 1242 (9th Cir. 2008).

As noted above, the IJ did not advise Mr. Gomez of the implications of proceeding without an attorney. Such a dereliction of duty by an IJ can constitute prejudice if a "competent attorney" could have made any difference at all in the outcome of his proceedings. See United States v. Ahumada-Aguilar, 295 F.3d 943, 950-951 (9th Cir. 2002) (finding prejudice because a "competent attorney" would have (1) pursued now foreclosed constitutional challenges; (2) "urged [respondent] to press an appeal in order to accrue the final ten months necessary for him to qualify for a discretionary waiver of deportation;" (3) "advised respondent of the significance of a deportation order;" and (4) "prevented Ahumada-Aguilar from making an unknowing and involuntary waiver of his right to appeal based on misinformation.").

Finally, Mr. Gomez emphasizes that the absence of an attorney may have affected the outcome of his proceedings in myriad ways. As the Ninth Circuit repeatedly has observed, "[t]he high stakes of a removal proceeding and the maze of immigration rules and regulations make evident the necessity of the right to counsel. The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." Ram, 529 F.3d at 1242. Here, a competent attorney would have argued for voluntary departure and explored the possibility of INA §212(a)(6)(A)(ii) relief. In any event, "with an attorney, he

would not have been forced to proceed pro se, to present a case with no evidence, to answer the IJ's inquiries without any idea of their legal significance, or to purport unwittingly to waive his appeal." Biwot v. Gonzalez, 403 F.3d 1094, 1100 (9th Cir. 2005).

    4.    Mr. Gomez Need Not Prove That He Would Have Been Granted Relief

Importantly, Mr. Gomez does not need to show that relief would have been granted. Rather, he must show only that it is "plausible" that relief would have become available during the pendency of proceedings. See United States v. Jimenez-Marmolejo, 104 F.3d 1083 (9th Cir. 1996) (Finding prejudice and reversing § 1326 conviction where defendant would have accumulated sufficient physical presence in the United States had he appealed his order of deportation.). Pursuant to Jimenez-Marmolejo, therefore, Mr. Gomez has made a prima-facie showing of prejudice.

## III.

## CONCLUSION

The Immigration Judge erred when he failed to advise Mr. Gomez of his eligibility for voluntary departure; potential eligibility for INA 212 §(a)(6)(A)(i); the importance of counsel, and thus failed to obtained a valid waiver thereof. He has made a *prima facie* showing of prejudice. These errors deprived Mr. Gomez of his due process right to a fair removal proceeding. The indictment against him should be dismissed.

    Respectfully submitted,

DATED:    July 30, 2008    /s/ *Erick Guzman*
    **ERICK L. GUZMAN**
    Federal Defenders of San Diego, Inc.
    Attorneys for Luis Gomez